**Flum v. Lichtenfeld**

*J. Brooke Aker and Dallett Hemphill,* for petitioner.

*William J. Gallagher,* for respondent.

GAWTHROP, III, *J.,* February 25, 1982—This comes before us upon the petition of A. Theodore Flum (Flum) to perpetuate testimony under 20 Pa.C.S. §775. A citation to show cause why the petition should not be granted was issued, hearing was held, and the testimony of Flum and respondent Samuel Lichtenfeld[1] (Lichtenfeld) was recorded. Counsel for Flum has moved the court to issue a final decree in this matter. The sole issue is whether this court should order that all the testimony and exhibits in this proceeding be perpetuated. Having considered the pleadings, arguments and briefs of counsel, we render this adjudication.

## FINDINGS OF FACT

1. Sylvia Lichtenfeld died testate on September 7, 1973.

2. Samuel Lichtenfeld is the widower of Sylvia Lichtenfeld.

3. Sylvia Lichtenfeld was the aunt of petitioner A. Theodore Flum.

4. Sylvia Lichetnfeld executed a will on January 10, 1973, which was admitted to probate as her last will.

5. Samuel Lichtenfeld also executed a will on January 10, 1973.

---

1. Former Judge Lichtenfeld of this court. He was not on the bench during the term of this writer, Cf: Com. ex rel. Armor v. Armor, 263 Pa. Super. 353, 398 A.2d 173 (1978).

6. In the wills of Sylvia and Samuel Lichtenfeld, dated January 10, 1973, each leaves his or her estate to the other and has identical provisions for the disposition of the entire estate in the event neither is survived by six months by the other spouse.

7. Flum contends, and Samuel Lichtenfeld denies, that Sylvia and Samuel Lichtenfeld contracted that each would leave his or her estate to the other, and that the survivor would leave three-eighths of his or her estate in equal shares to Sylvia Lichtenfeld's next-of-kin, Phillip Landau, Ann Flum, and A. Theodore Flum, with the remaining five-eighths to be divided in equal shares among Samuel Lichtenfeld's next-of-kin, Sarah Shore, Rebecca Weinstein, Henrietta Wolfe, Benjamin Lichtenfeld, and Leonard Lichtenfeld.

8. Since the death of Sylvia Lichtenfeld, Samuel Lichtenfeld has executed codicils to his will of January, 1973, and has executed a later will, all of which depart from the alleged contract to will between Sylvia and Samuel Lichtenfeld.

## DISCUSSION

Petitioner Flum seeks to have preserved the testimony of respondent Lichtenfeld and petitioner regarding an alleged contract to will entered into by Lichtenfeld and his late wife. The purported agreement provided that the surviving spouse would leave his or her entire estate in equal shares to eight next-of-kin, one of whom is Flum. Flum contends that he has spoken with Lichtenfeld regarding this alleged agreement. Since the death of his wife, Judge Lichtenfeld has executed a will which, Flum contends, is a breach of Lichtenfeld's agreement.

Since Judge Lichtenfeld has made changes in his will, Flum anticipates litigation at his death regard-

ing the alleged contract to will. At that time, Flum argues, Judge Lichtenfeld obviously will be unavailable to testify, and the Dead Man's Act, 20 Pa.C.S. §5930, would bar Flum from testifying about his conversations with Judge Lichtenfeld on this subject. For these reasons, Flum prays the court to perpetuate the testimony taken and exhibits identified in this proceeding. Counsel for Judge Lichtenfeld contends that the court should deny the petition because Flum lacks a fixed and vested interest in the estate of Lichtenfeld and because Flum has failed to show he is likely to succeed in the contemplated litigation.

The Decedents, Estates and Fiduciaries Code, 20 Pa.C.S. §775, provides:

"The orphans' court division, by general rule or special order, may prescribe the practice relating to the perpetuation of testimony and to the perpetuation of lost or destroyed court records. When proved, such court records shall have the same legal effect as original records would have had. Notice of proceedings for the perpetuation of testimony and for the perpetuation of lost or destroyed court records shall be given in such manner as the division shall direct."

This provision reenacts §743 of the Orphans' Court Act of August 10, 1951, P.L. 1163, Art. VII, which in turn was based upon the Orphans' Court Act of June 7, 1917, P.L. 363, §20(d). Before passage of these acts, courts of equity would entertain bills to perpetuate testimony "when the matter as to which the witnesses are to be examined can not be made the subject of immediate judicial investigation," as when petitioner's interest is in a remainder. International Coal Mining Co. v. Pennsylvania R.R. Co., 214 Pa. 469, 470-71, 63 A.H. 880 (1906). Equity would also consider bills to preserve testimony of

aged or infirm witnesses or those about to depart from the country in pending actions for use at trial. International Coal, supra, 214 Pa. at 471-72.

In pending actions in both law and equity, it is now possible through the discovery rules to perpetuate by deposition the testimony of aged, infirm or going witnesses. Former Pa.R.C.P. 4003(a) specifically provided for taking a deposition for use at trial in the case of an aged, infirm or going witness. A *going* witness is, generally, one about to depart from the state or who is in the state only temporarily, but Pa.R.C.P. 4020 specifically permits the use at trial of any witness more than 100 miles from the courthouse. Kuntz v. Firth, 216 Pa. Super. 155, 157, 264 A.2d 432 (1970). Though former Rule 4003(a) has been rescinded, Pa.R.C.P. 4007.1 permits taking the deposition of any person "for the purpose of discovery . . . or for preparation or trial of a case." We believe that depositions to perpetuate testimony for use at trial fall within the rule. Goodrich-Amram 2d, §4001(c):5. As we noted in our decision in Rogers Estate, 30 Fiduc. Rep. 537, 538-39, 17 D.&C.3d 410, 411-12 29 (1980), these rules are applicable in orphans' court proceedings:

"Our analysis begins with Pennsylvania Orphans' Court Rule 3.1, which states that, "except where otherwise provided . . . the pleading and practice [in Orphans' Court] shall conform to the pleading and practice in equity in the local court of common pleas." Equity procedure, in turn, "shall be in accordance with the rules relating to the action of assumpsit" except as otherwise provided in the equity chapter: Pa.R.C.P. 1501."

Orphan's Court Rule 3.6 specifically refers to the practice relating to depositions and provides that:

"The local orphans' court, by general rule or special order, may prescribe the practice relating to de-

positions, discovery, production of documents and perpetuation of testimony. To the extent not provided for . . . the practice relating to such matters shall conform to the practice in the trial or civil division of the local court of common pleas."

Further, Pa.R.C.P. 4001(a), the preamble to the discovery chapter, provides: "The rules of this chapter apply to any civil action or proceeding [at] law or in equity brought in or appealed to any court which is subject to these rules . . . ." We conclude that the discovery rules are applicable to actions in the orphans' court division.

Chester County Orphans' Court Rule 3.6(1) provides that:

"The practice and procedure relating to perpetuation of testimony and court records shall conform to the practice and procedure of the court of common pleas generally."

There are no reported Pennsylvania appellate decisions interpreting 20 Pa.C.S. §775, or its predecessors, or the perpetuation of testimony in orphans' court matters. However, in all but one discovered reported decisions dealing with orphans' court matters, the request to have testimony preserved was granted. Watson v. Monroe, 12 Dist. 570 (Luzerne 1903); Baker v. Weiss, 52 Dauph. 50, 43 D.&C. 707 (1941); Hyndman Estate, 1 Fiduc. Rep. 399 (Phila. O.C. 1951) (Opinion by Hunter, J.); Timko Estate, 16 Somerset L.J. 396, 4 Fiduc. Rep. 169 (O.C. 1954); Axe Estate (No. 2), 37 D.&C.2d 626, 16 Fiduc. Rep. 49 (Phila. O.C. 1965); Thompson Estate, 25 Fiduc. Rep. 254 (York, O.C. 1974).

Counsel for Lichtenfeld urges us to follow the reasoning and authorities cited in Axe Estate (No. 2), supra; Hanford v. Ewen, 79 Ill. App. 327 (1898) (an Illinois case cited in Axe Estate (No. 2)), and Pond v. Faust, 155 P. 776, 777 (Wash. 1916), which .

all refused to perpetuate testimony on the basis that until a testator dies, he has no heirs and thus the potential heirs have no present rights in the estate and no right to perpetuate testimony regarding it.

In Axe Estate (No. 2), the daughter of a 95-year-old incompetent sought to perpetuate the testimony of 13 witnesses, aged 65 to 80, for an expected contest of the incompetent's will. Noting that the rules governing discovery ensured the right to perpetuate the testimony of aged, infirm or going witnesses in pending actions, the court concluded, citing Goodrich-Amram Civil Practice §1532-1, that when suit has not yet been brought and perpetuation of testimony is necessary, the only remedy is in equity. Finding that petitioners could not bring an action in the orphans' court until the incompetent's death, when their interests in her estate could vest, the court found it lacked jurisdiction to hear the matter, since it was a court of limited jurisdiction. The decision of the court in Axe Estate (No. 2) thus turned on its findings that petitioners had no present interest in the estate of the incompetent. In support of this finding, it cited the Illinois decision in Hanford v. Ewen, supra, as well as the somewhat unrecent case of Sackwill v. Ayleworth, 1 Vern. 105 (1682).

We note that the court in Axe Estate (No. 2) makes no mention of §743 of the Orphans' Court Act of 1951, which is identical to the present 20 Pa.C.S. §775. Nor does it cite the contrary opinion of Judge Hunter in Hyndman Estate, supra, or that of the Somerset Orphans' Court in Timko Estate, supra. Since the court in Axe Estate (No. 2) failed to consider these authorities, which are directly on point, we find its reasoning unpersuasive. In the absence of a statute authorizing the orphans' courts to perpetuate testimony, we might adopt the vested in-

terest test. However, we believe the better statement of the law is found in Hyndman Estate.

The testator in Hyndman executed a will which was admitted to probate less than 30 days before his death, leaving the residue of his estate to his wife for life, with the remainder to be distributed among various churches and religious charities. The remainder would have been invalid unless the probated will revoked a prior will or codicil containing identical gifts for substantially the same religious purposes. The remaindermen sought to have perpetuated testimony regarding a will, executed six months before that admitted to probate, which had the same provisions regarding the remaindermen. Finding that the rights in the remainder would not be determined until the death of the life tenant, the court ordered the testimony perpetuated, reasoning that §20(d) of the Orphans' Court Act of 1917 (predecessor of 20 Pa.C.S. §775), provided that every orphans' court shall have the jurisdiction and powers of a court of chancery so far as it relates to the perpetuation of testimony in all cases. The court found that the decision in International Coal, supra, authorized perpetuating the evidence.

Petitioners in Thompson Estate, supra, as in Hyndman Estate, were remaindermen. The testatrix in Thompson Estate had no natural children, yet left the residue to her *daughter* for life in trust, with the remainder to pass to her *grandchildren*. In determining the intent of decedent, the court admitted testimony showing that Mrs. Thompson had treated her husband's daughter, and the daughter's children, as her own, concluding that the life estate was to pass to stepdaughter. At the request of the stepdaughter's children, under the provisions of 20 Pa.C.S. §775, this testimony was preserved for use at the time of the life tenant's

death, when the interest of petitioners would be determined.

In Axe Estate (No. 2), only one prior Pennsylvania decision regarding perpetuation of testimony is cited. Baker v. Weis; supra. That court distinguished Baker on two bases: (1) the action was brought in the equity division of the court of common pleas, which has the power to perpetuate testimony when no action is pending, and (2) the testimony to be perpetuated dealt with a possible beneficiary of three existing trusts which, when created, fixed the rights of the parties. We do not believe these distinctions relevant here.

As to the first, 20 Pa.C.S. §775 specifically permits the orphans' court to perpetuate testimony relating to a matter not capable of immediate judicial determination. See Hyndman Estate, supra. As to the second, the situation in Baker was very similar to that at bar. The testimony which was ordered perpetuated in Baker was that of the physician who attended the child's birth, who found the child fully developed, evidence of nonaccess of the husband to his wife during the time of possible conception, testimony of wife's maid that a male friend spent two nights with wife during the likely time of conception, as well as the testimony of two experts who concluded, based on blood tests, that the husband could not be the child's father. If the husband were the father of the child, then the child and her issue, might have become beneficiaries of the existing trusts. Reasoning that before she was eligible as a beneficiary the child could die under circumstances making her body unavailable for blood tests if and when her issue claimed eligibility, the court found the matter a proper one for perpetuating all testimony on the subject. Here, Flum may not make his claim as a beneficiary of the contract to will between

Sylvia and Samuel Lichtenfeld until Lichtenfeld's death. Then Lichtenfeld will be unavailable to testify regarding the contract, as the child in Baker at her death might be unavailable for blood tests.[2] Also, though the trusts in Baker were in place, it was possible that neither the child nor her issue would be eligible to claim as beneficiaries under the trusts. Similarly, here Lichtenfeld's estate may have no residue in which Flum could claim an interest.

In light of the authorities from this jurisdiction, we are not persuaded to follow the decisions in Hanford v. Ewen, supra, and Pond v. Faust, supra, which only permit those with a present interest in the matter to have testimony perpetuated. Nor do we believe it proper to apply the language set forth in State v. District Court, 120 Mt. 34, 189 P.2d 998, 1000 (1948) Hall v. Merchants & Farmers Bank, 227 Mis. 1000, 85 So. 2d 788, 799 (1956), and Kelly v. People, 121 Colo. 243, 215 P. 2d 336 (1950), to deny Flum's application, as counsel for Lichtenfeld urges. These decisions speak of a need to deny *sham* applications, that an application must be made in good faith, that testimony may not be sought to frame a complaint nor to "fish" for evidence. There is nothing here to suggest to this court that Flum's application is sham or made in bad faith. The documents presented and Flum's testimony are in accord with his petition. We find these authorities unpersuasive contrary to the law of Pennsylvania and expressive of a somewhat outmoded, restrictive view of discovery. In Pennsylvania, discovery may be sought and testimony perpetuated to frame a complaint, Pa.R.C.P. 4001(c), 4007.2; Otto v. American Mut. Ins. Co., 241 Pa. Su-

---

2. Indeed, even more so, as blood, unlike testimony, may be taken posthumously.

per. 423, 361 A.2d 815, 821-22, fn. 13 (1976), vacated on other grounds, 482 Pa. 202, 393 A.2d 450 (1978); Gross v. United Engineers & Constructors, Inc., 224 Pa. Super. 233, 237, 302 A.2d 307 (1973).

It is also argued by counsel for Judge Lichtenfeld that to grant Flum's petition would subject Judge Lichtenfeld to needless depositions and permit Flum to fish for evidence. These arguments are now moot, since the testimony of both Flum and Judge Lichtenfeld has already been taken. The burden of perpetuating this evidence will now be felt only by the file cabinets of the clerk of the orphans' court division, where these few inches of records will be stored.

Finally, we note that the Dead Man's Rule has been subjected to no small amount of criticism over the years for the harsh result it sometimes occasions. Dean Wigmore, for example, observed:

"There never was and never will be an exclusion on the score of interest which can be defended as either logically or practically sound. Add to this, the labyrinthine distinctions created in the application of the complicated statutes defining this rule; and the result is a mass of vain quiddities which have not the slightest relation to the testimonial trustworthiness of the witness . . . for it is based on a fallacious and exploded principle, it leads to as much or more false decision than it prevents, and it encumbers the profession with a profuse mass of barren quibbles over the interpretation of mere words." Wigmore, Evidence §578, 3d Ed. (1940); see also: Grossman Estate, 486 Pa. 460, 406 A.2d 726 (1979); Silverman, The Pennsylvania Dead Man's Rule; A Decedent's Delight, 11 Duq. L. Rev. 313 (1973); Schulman, Repeal the Dead Man's Evidence Act, 35 Pa.B.A.Q. 183 (1964); Ray, Dead man's Statutes, 24 Ohio St. L.J. 89 (1963); Carpen-

ter, The Dead Man's Statute in Pennsylvania, 32 Temp. L.Q. 399 (1959); Chadbourne, History and Interpretation of the California Dead Man Statute: A Proposal for Liberalization, 4 U.C.L.A. L. Rev. 175 (1957); Ray, The Dead Man's Statute — A Relic of the Past, 10 Sw. L.J. 390 (1956).

The effect of the decision at bar is merely to permit the presentation of testimony to assist our constant quest for the truth, to untie testimonial tongues. Although we appreciate the tactical[3] minuet of which the parties to this proceeding presently partake, we prefer to choreograph this case so that the ultimate result turns not on an artificial, statutory gag rule, but rather, upon an evaluation of the whole truth.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and subject matter of this action.

2. Flum would be barred by the Dead Man's Rule, 20 Pa.C.S. §5930, from testifying about the alleged oral contract to will in any proceeding to enforce the contract after Samuel Lichtenfeld's death.

3. Flum is a named third-party beneficiary to the alleged contract between Sylvia and Samuel Lichtenfeld whose interest, if any, in Samuel

---

3. Indeed, with respect to the question of tactics, should by chance the legislature or the courts see fit to do away with the Dead Man's Act, a not entirely unforeseeable happening, we observe that the preservation of Judge Lichtenfeld's testimony, memorialized on stenotype and videotape, could in fact have the effect of backfiring on petitioner Flum and prove his undoing in this case.

Lichtenfeld's estate may not be determined until Samuel Lichtenfeld's death.

4. The existence, terms, and validity of the alleged contract to will may not be adjudicated until the death of Samuel Lichtenfeld.

5. This court may, under the provisions of 20 Pa.C.S. §775, Pa. Supreme Court O.C. Rule 3.6 and Chester County Rule 3.6(1), order that all the testimony taken in this matter be perpetuated for use in any future proceedings to determine the rights of any person claiming to be a beneficiary under the contract to will allegedly entered into by Sylvia and Samuel Lichtenfeld.

## DECREE NISI

And now, this February 25, 1982, it is hereby ordered and decreed that all of the testimony taken in this matter and all exhibits referred to and identified therein, all of which are attached to this decree nisi, are hereby perpetuated for use by or against A. Theodore Flum or Samuel Lichtenfeld or anyone succeeding to the interest of either including the personal representative of either for use in any future proceeding to determine the rights of parties claiming to be beneficiaries under the alleged contract to will.

This decree is intended solely to preserve the evidence so that a future court may weigh and pass upon it, and does not adjudicate the relevancy or materiality of the evidence, nor does it determime the merits of the claim of contract to will.

If no exceptions are filed within 10 days of the notice of filing of this adjudication and decree nisi, the decree nisi shall be entered by the clerk of the orphans' court division on praecipe as the final decree.