[No. 12668. *En Banc*. March 4, 1916.]

LOUISE B. POND, *Guardian, Respondent*, v.
KATHERINE L. FAUST *et al., Appellants.*[1]

WILLS—JURISDICTION—VALIDITY—DETERMINATION DURING LIFE OF TESTATOR—ACTIONS. The courts have no jurisdiction to compel the surrender and cancellation of a purported will of an insane ward, at the suit of her guardian during her lifetime, or in the alternative, entertain the suit to perpetuate testimony as to her mental condition at the time the will was executed; since the courts have no jurisdiction over wills except as given by statute, and the guardian has no interest either in establishing or disestablishing a will of his ward.

Appeal from a judgment of the superior court for King county, Tallman, J., entered October 1, 1914, in favor of the plaintiff, in an action by a guardian to compel the production and cancellation of a will of an insane person, after a hearing before the court. Reversed.

*C. M. Miller*, for appellants.

*Mitchell & Lawrence*, for respondent.

HOLCOMB, J.—In this case respondent, as guardian of Mary S. Pond, an insane person, attempts to compel the surrender of a purported will of her ward to be annulled and canceled, on the ground that the testatrix was insane and incompetent at the time of its execution. It is further al-

[1]Reported in 155 Pac. 776.

leged, that the instrument purporting to be a will was prepared by appellants and procured by them from the ward without her knowledge of its contents, and by fraud; that it was procured by appellants in order that they might gain control of the ward's estate after her death; that it is wrongfully withheld from the guardian; that, if permitted to remain outstanding or its provisions attempted to be asserted or carried out after her death, it will work an injustice to her estate and her lawful heirs; that, if attempted to be probated after the death of the ward, her estate or her heirs will be subjected to great expense in resisting same or to prevent appellants from gaining an improper and unwarranted control of her estate by reason of it; that such witnesses as know of the mental condition of the ward at the time of the making of the instrument can now be obtained and brought before the court; that they are liable to die or cannot be produced after the death of the ward; that it is now necessary to take this procedure to determine the validity of such instrument and to perpetuate the testimony of such witnesses, and there is danger of the loss of evidence; that the estate of the ward is endangered by the outstanding of the instrument; that the ward is greatly distressed, worried, annoyed and disturbed in mind by reason of the outstanding of the instrument, which condition cannot be overcome unless it is delivered up and canceled by the court; that the guardian is unable to secure the instrument without the aid of the court.   Respondent also prayed for alternative relief that, if the court refused to cancel the instrument, the testimony relating to the mental condition of the ward when the instrument was executed be taken and perpetuated.

Upon the filing of the petition, a citation was issued to appellants, which they moved to quash on the ground that the court had no jurisdiction to entertain the matter; and at the hearing, they objected to the jurisdiction of the court on the ground that the testatrix was still alive, that the guardian had no interest in the will prior to the decease of the testatrix,

and that the proceedings were of the nature of a contest of the will. The motion was denied, the objection overruled, and the court proceeded to hear and determine the matter. The court found that Miss Pond was insane at the time of making the will, ordered it taken from the possession of the depositee, Miller, and annulled, but held in safekeeping in the files of the court.

The will was executed in January, 1914, and delivered to Miller, an attorney, as custodian, for safekeeping. Appellant Faust was named in the will as executrix. In May, 1914, Miss Pond was adjudged insane, and respondent, a sister-in-law, was appointed her guardian.

The case is one where we can get no help from judicial precedents. It is admitted that such a proceeding is unheard of in this country or England, and that there is no statutory authority to compel the production of a will or to enforce its cancellation during the lifetime of its maker.

It is claimed by respondent, however, that "because an action is new and without precedent is not conclusive against recovery if it is shown that a wrong has been suffered." *Kujek v. Goldman*, 150 N. Y. 176, 44 N. E. 773, 55 Am. St. 670, 34 L. R. A. 156; *Piper v. Hoard*, 107 N. Y. 73, 13 N. E. 626, 1 Am. St. 789; Story, Equity Pleading (10th ed.), 473. That is true, and the courts of common law and of equity in this country have ever been most eager and ingenious to admit or to provide an adequate remedy for a wrong suffered where none existed before. But what wrong has been suffered, or what is impending? It must be conceded without quibble that a will made by an insane or otherwise incompetent person is a nullity. The same is true of any instrument made by an insane person.

"The right to make a testamentary disposition of property is neither a natural nor a constitutional right. Such right is derived from and rests in positive law. A will is said to be ambulatory until the death of the testator, and until that event occurs the testamentary disposition is subject to

the will of the testator, and likewise to the will of the state as expressed in its public laws. The will speaks as. of the date of the testator's death, . . ." *Strand v. Stewart*, 51 Wash. 685, 99 Pac. 1027.

Until a man dies he has no heirs. It can never be known before then, even if he die intestate,. who will succeed him and be legally found to be his heirs. It is even possible that he may consume his entire estate during life and at death have no estate to pass by will or otherwise.

"The broadest definition ever given to the judicial power confines it to controversies between conflicting parties in interest, and such can never be the condition of a living man and his possible heirs." *Lloyd v. Wayne Circuit Judge*, 56 Mich. 236, 23 N. W. 28, 56 Am. Rep. 378.

Here we have not even the possible heirs seeking relief. But we are cited to the statutes (Rem. & Bal. Code, §§ 1659, 1662; P. C. 409 § 757, 763), making it the duty of a guardian to prosecute any action pending by or against the ward, or thereafter to be commenced by or on account of the ward; and to collect and take possession of the goods, chattels, moneys, effects, and other evidences of debt, and all writings touching the estate, real and personal, of the ward.

"The last will and testament of the ward is not an asset. Neither is it an instrument which the guardian could use in the recovery of an asset. It can not in any way relate to any matter within his power or duties, or in any manner affect his action as a guardian, because it cannot take effect until after his authority has ceased. He certainly cannot annul, revoke, destroy, or in any way dispose of it, nor can the court authorize him to do so; . . ." *Mastick v. Superior Court*, 94 Cal. 347, 29 Pac. 869.

And, as in the case above quoted, the appellant Miller "is charged with the execution of his trust—the safekeeping of the will"—delivered to him for that purpose. That trust could be revoked only by Miss Pond herself. The court had no jurisdiction whatsoever, either to "compel a surrender and cancellation of the will, or to perpetuate testimony as to the

mental condition of Miss Pond at the time the will was executed," as prayed alternatively by the respondent.

In *Lloyd v. Wayne Circuit Judge, supra,* it was declared that even a statute providing for the *ante mortem* adjudication of the validity of a will and its admission to probate was invalid. This is upon sound principle and reason; and manifestly the converse is equally true, that courts have no power to inquire into the validity of wills prior to the death of the maker, to determine the *incompetency* of the maker.

Our statute, Rem. & Bal. Code, § 1289 (P. C. 409 § 75), provides that "any person having the custody of any will, shall, within thirty days after he shall have received knowledge of the death of the testator or testatrix, deliver said will into the superior court which has jurisdiction, or to the person named in said will as executor;" and provides penalties for willful failure or neglect so to deliver. Sections 1293, 1294 (P. C. 409 §§ 87, 89), provide for a petition and order to deliver such will by the custodian "to be admitted to probate." It is certain that the will cannot be "admitted to probate" except after the death of the testator. Section 1297 (P. C. 409 § 95) provides that the court shall, upon the production and exhibition of the will, receive the proof and issue a certificate of probate or of rejection. When the will is offered for probate, there must be proof that the deceased was of sound mind when the will was executed. *In re Baldwin's Estate,* 13 Wash. 666, 43 Pac. 934; *Higgins v. Nethery,* 30 Wash. 239, 70 Pac. 489.

Sections 1307-1311, Rem. & Bal. Code (P. C. 409 §§ 115-123), provide how and when wills may be contested, "at any time within one year after the probate thereof." Wills being creatures of the statute, these various statutes are most assuredly fully comprehensive and exclusive, and aside from their directions, no court has any jurisdiction of any kind over wills.

Furthermore, the guardian has, or should have, no interest whatever either in establishing or disestablishing a will of

his ward.   He has no authority in the matter.   He might
possibly have sufficient special interest and right of posses-
sion to authorize him to maintain a replevin suit to recover
its possession for safekeeping from one in unauthorized pos-
session of it, but no more.   The law provides a method of
custody and safekeeping of wills only for the purpose of
safety and repose, but otherwise does not notice wills during
the lifetime of their makers.

The judgment is reversed and the proceeding dismissed.

PARKER, MOUNT, MAIN, ELLIS, FULLERTON, and BAUSMAN,
JJ., concur.