2014 AUG -4 AM 9: 47



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re the Estate of

J. THOMAS BERNARD,

Deceased.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 69608-4-I
(Consolidated with
No. 69702-1-I)

DIVISION ONE

PUBLISHED

FILED: August 4, 2014

Cox, J. — A court's paramount duty in construing a testamentary instrument is to give effect to the maker's intent.[1] We determine that intent from the instrument as a whole.[2] Similarly, "[t]he 'touchstone of contract interpretation is the parties' intent.'"[3] We follow "the objective manifestation theory of contracts, imputing an intention corresponding to the reasonable meaning of the words used."[4]

Generally, a personal representative of an estate has the right to appeal an adverse decision in a will contest, as it is the duty of the executor to take all

---

[1] In re Estate of Riemcke, 80 Wn.2d 722, 728, 497 P.2d 1319 (1972).

[2] Id.

[3] Realm, Inc. v. City of Olympia, 168 Wn. App. 1, 4-5, 277 P.3d 679 (quoting Durand v. HIMC Corp., 151 Wn. App. 818, 829, 214 P.3d 189 (2009)), review denied, 175 Wn.2d 1015 (2012).

[4] Id. at 5.

legitimate steps to uphold the testamentary instrument.[5] Likewise, a trustee may appeal an adverse ruling that goes to the validity of the trust itself.[6]

Here, a trial court judge decided on reconsideration of a motion for partial summary judgment that the First Codicil to the Will of J. Thomas Bernard, dated August 27, 2009, and the First Amendment to the J. Thomas Bernard Revocable Trust Agreement of even date were null and void as a matter of law. We conclude from our de novo review of these and other material documents that this was error.

We also conclude that a different trial court judge erred in deciding that the personal representative of the estate and the trustees of the trust did not have the right to appeal the adverse ruling we described in the previous paragraph. The circumstances of this case do not warrant that ruling.

We reverse and remand for further proceedings.

In 2008, James Bernard filed a petition for guardianship of his father, J. Thomas Bernard, and his father's estate. James alleged in the petition that Tom suffered from dementia and short-term memory loss.[7] James also alleged that Tom's reasoning and judgment were impaired and that Tom was vulnerable to financial exploitation.

The following year, Tom executed the Will of J. Thomas Bernard and the J. Thomas Bernard Revocable Trust Agreement, both of which are dated March

---

[5] See In re Klein's Estate, 28 Wn.2d 456, 475, 183 P.2d 518 (1947).

[6] See In re Ferrall's Estate, 33 Cal. 2d 202, 205-06, 200 P.2d 1 (Cal. 1948).

[7] For clarity, we refer to father and son by their first names.

25, 2009. On advice of counsel, Tom used a revocable living trust "to avoid any negative tax consequences along with a notice requirement to [James] if Tom wanted to modify the Trust."[8]

On March 27, 2009, the superior court dismissed the guardianship petition that James filed the previous year.

The trust agreement provided that the residue of Tom's estate would pass to James or his issue. It also provided that if James predeceased Tom and left no issue, the estate would pass to Tom's niece and nephews, Rose Linger, Larry Emery, and Richard Emery (the "Linger Beneficiaries"), and to various organizations. Under this instrument, each of the Linger Beneficiaries was to receive a 20 percent share.

Tom reserved in this revocable trust the power to revoke, withdraw property from, or modify the trust. These rights are stated in Article 3.1 of the trust instrument. Additionally, the instrument included provisions about exercising these rights:

> **3.2 Effectiveness.** Any revocation, withdrawal of property, or *modification* shall be valid and fully effective whenever Trustee shall receive from Trustor written notice thereof, except that the powers and duties of Trustee shall not be changed without Trustee's written consent. In the case of revocation or withdrawal of property, Trustee shall have a reasonable time to transfer or deliver the property.
>
> **3.3 Rights Personal to Trustor Subject to Binding Non-Judicial Agreement.** The rights reserved by the Trustor are personal to Trustor and may not be exercised by Trustor's attorneys-in-fact appointed under a duly executed durable power of attorney or by any guardian of Trustor's estate absent court order of

---

[8] Clerk's Papers at 423.

a court of competent jurisdiction. Notwithstanding any other provision of this Agreement, such rights are **subject to** that certain Non-Judicial Agreement regarding the J. Thomas Bernard Revocable Living Trust Agreement ("TEDRA") of even date herewith and are not exercisable by Trustor unless and until Trustor obtains the court order required by such agreement and otherwise satisfies all of the requirements imposed by the TEDRA. If and to the extent such TEDRA is determined to be unenforceable for any reason, the restrictions on Trustor's right to revoke, modify, and/or withdraw property from this Trust as stated therein shall be incorporated in this Agreement by reference and shall remain fully enforceable against the Trustor.[9]

Tom and James also executed the "Non-Judicial Agreement Re Trust Pursuant to RCW 11.96A," effective as of March 27, 2009 (the "March TEDRA agreement").[10] They were the only parties to this agreement.

The agreement stated that it was "a compromise to certain disputes that have arisen between Tom and James regarding the current management and future disposition of Tom's assets."[11] It also stated that the parties "agree that establishing the Trust and agreeing to the terms of this Agreement is a mutually acceptable less restrictive alternative to a guardianship of the estate and James will forgo filing for a guardianship of Tom's estate so long as this Trust is in force and functional."[12]

The agreement further provided three requirements to be met before Tom exercised his modification powers:

---

[9] Id. at 208 (emphasis added).

[10] Id. at 427-32.

[11] Id. at 428.

[12] Id.

4

> [A]lthough both the Trust and the Will remain revocable and/or modifiable by Tom during his lifetime, the Parties agree that no exercise of Tom's Modification Powers over either or both of the Trust and/or the Will shall be effective unless and until:
>
> i. Tom files a petition for a hearing under RCW 11.96A in King County Superior court which clearly and specifically sets forth a particular proposal for an exercise of his Modification Powers,
>
> ii. timely provides James with a summons for such hearing pursuant to RCW 11.96A.100 (and otherwise complies with the substantive and procedural provisions of RCW 11.96A), and
>
> iii. as a result of such a hearing, the court issues an order approving the exercise of some or all of the particular Modification Power(s) expressly requested in Tom's petition.
>
> Accordingly, the Parties expressly acknowledge and agree that any exercise by Tom of his Modification Powers over the Trust and/or the Will without first obtaining such a court order (and otherwise complying with the terms of this Agreement) shall be null and void.[13]

In June 2009, Tom's attorney filed with the superior court a memorandum summarizing the terms of the March TEDRA agreement.

Tom's relationship with his niece, Rose Linger, deteriorated. In July 2009, the trustees for the trust sued Linger and her husband to collect outstanding loans.

In August 2009, Tom and his son, James, executed a second "Non-Judicial Agreement Pursuant to RCW 11.96A," effective as of August 27, 2009 (the "August TEDRA agreement"). They were the only parties to this second agreement.

---

13 Id. at 429.

This August TEDRA agreement acknowledged the three modification requirements set out in the March TEDRA agreement. It also stated that "this Amended Agreement will satisfy the [March TEDRA] Agreement's requirement to obtain a court order prior to any exercise of Tom's Modification Powers."

The August TEDRA agreement included, as attached exhibits, unexecuted copies of the First Amendment to the J. Thomas Bernard Revocable Trust Agreement and the First Codicil to the Will of J. Thomas Bernard.

The first amendment to trust and the first codicil state that they are also effective as of August 27, 2009.

The substance of the changes from the March 2009 trust was to reduce the shares of the Linger Beneficiaries from 20 percent each to $20,000 each. Moreover, the first amendment to trust added additional contingent beneficiaries: Leah Karp, Diane Viars, and Daniel Reina (collectively the "Karp Beneficiaries"). These beneficiaries are also to receive shares of the trust estate, two of them receiving 15 percent shares each, and one receiving a 25 percent share.

This record indicates that the trust estate is substantial. Thus, the distributive scheme—shares of $20,000 or percentages of the trust estate—has a substantial impact on the amounts that the contingent beneficiaries may receive from the estate.

In February 2010, Tom's attorney filed with the superior court a memorandum summarizing the terms of the August TEDRA agreement.

James predeceased Tom in September 2010, leaving no issue. Tom died in January 2011.

After the filing of Tom's testamentary documents with the court, the Linger Beneficiaries, by amended petition, contested the March TEDRA agreement, the Will of J. Thomas Bernard dated March 25, 2009, the J. Thomas Bernard Revocable Trust Agreement dated March 25, 2009, the First Codicil to the Will of J. Thomas Bernard, dated August 27, 2009,[14] and the First Amendment to the J. Thomas Bernard Revocable Trust Agreement, dated August 27, 2009.

The Linger Beneficiaries moved for partial summary judgment. They requested that the court invalidate the "March Agreement." They identified this agreement as including the March TEDRA agreement, the will, and the revocable trust. They also sought to invalidate the "August Agreement." They identified this agreement as including the August TEDRA agreement, the first codicil, and the first amendment to trust.

Alternatively, the Linger Beneficiaries argued that the "August 2009 Amendment"—the first amendment to trust and the first codicil—was void. The personal representative of the estate, the trustees of the trust, and the Karp Beneficiaries opposed the motion.

The trial court denied the motion for partial summary judgment, concluding that there were genuine issues of material fact related to the March TEDRA agreement. The court deferred making any decision "involving the validity and

---

[14] The parties erroneously stated that these documents were dated August 22, 2009. The record indicates that the first amendment to trust and the first codicil were executed on August 27, 2009 and that the effective date of the August TEDRA agreement was also August 27, 2009. See Clerk's Papers at 11, 239-42, 422, 440.

effectiveness of subsequent agreements reached between the testator, [Tom], and his son [James], specifically the August TEDRA agreement."

The Linger Beneficiaries moved for reconsideration of the denial of summary judgment. They requested the court to reconsider its deferral of the legal issues related to the validity of the August TEDRA agreement, the first amendment to trust, and the first codicil.

By its order dated October 19, 2012, the trial court granted the motion for reconsideration. It concluded that the first codicil, effective as of August 27, 2009, and the first amendment to trust of even date were "null and void as a matter of law." This order incorporated the court's oral ruling of October 12, 2012.

The Karp Beneficiaries moved for reconsideration of the October 19, 2012 order. The personal representative of the estate and the trustees joined in their motion. The court ultimately denied reconsideration.

The personal representative of the estate and the trustees of the trust petitioned for instructions. They sought a determination whether they had a right to appeal the October 19, 2012 order. The Karp Beneficiaries supported this petition. A court commissioner decided that the personal representative and the trustees "have an absolute right to appeal" this order.

The Linger Beneficiaries moved for revision of the commissioner's order, and the matter came before a different superior court judge than the one who entered the October 19, 2012 order. The revision judge granted this motion,

8

concluding that the personal representative and trustees "do not have the right to appeal" the October 19, 2012 order.

The Karp Beneficiaries appeal. The personal representative of the estate and trustees of the trust also appeal.

## THE FIRST AMENDMENT TO TRUST AND FIRST CODICIL TO WILL

The Karp Beneficiaries argue that the trial court erred when it concluded that the first amendment to trust, effective August 27, 2009, and first codicil to will of even date are null and void as a matter of law. We agree.

We review de novo the grant or denial of a summary judgment motion.[15] Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[16] The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party.[17]

We review de novo the interpretation of a will or trust instrument.[18] "Where the meaning of an instrument evidencing a trust is unambiguous, the

---

[15] Tiffany Family Trust Corp. v. City of Kent, 155 Wn.2d 225, 230, 119 P.3d 325 (2005).

[16] CR 56(c).

[17] Yakima Fruit & Cold Storage Co. v. Cent. Heating & Plumbing Co., 81 Wn.2d 528, 530, 503 P.2d 108 (1972).

[18] In re Wash. Builders Benefit Trust, 173 Wn. App. 34, 75, 293 P.3d 1206 (citing In re Estate of Curry, 98 Wn. App. 107, 112-13, 988 P.2d 505 (1999)), review denied, 177 Wn.2d 1018 (2013).

instrument is not one requiring judicial construction or interpretation . . . ."[19]

When construing a testamentary instrument, our paramount duty is to give effect to the maker's intent.[20] That intent must be gathered from the instrument as a whole, and specific provisions must be construed in light of the entire document.[21]

Similarly, "[t]he 'touchstone of contract interpretation is the parties' intent.'"[22] "Washington courts follow the objective manifestation theory of contracts, imputing an intention corresponding to the reasonable meaning of the words used."[23]

Here, the trial court did not address whether Tom had the capacity to make any of the testamentary documents or the two TEDRA agreements that are before us. Neither do we. The question of his capacity is not properly before us at this time, despite this argument in the appellate briefing by the Linger Beneficiaries. Likewise, the question of whether Tom was subjected to undue influence is not before us.

---

[19] Templeton v. Peoples Nat'l Bank of Wash., 106 Wn.2d 304, 309, 722 P.2d 63 (1986).

[20] Riemcke, 80 Wn.2d at 728.

[21] Id.

[22] Realm, 168 Wn. App. at 4-5 (quoting Durand, 151 Wn. App. at 829).

[23] Id. at 5.

Rather, the focus of our review is limited to the trial court's decision declaring the first codicil to will, effective as of August 27, 2009, and the first amendment to trust of even date void as a matter of law.

*Terms of the March 25, 2009 Trust and Will*

In order to determine whether Tom complied with the specific method of modification when he executed the first amendment to trust, we first determine the modification requirements imposed by the trust itself.

The following articles in the trust instrument are relevant to this inquiry:

> **3.2 Effectiveness.** Any revocation, withdrawal of property, or modification shall be valid and fully effective whenever Trustee shall receive from Trustor written notice thereof, except that the powers and duties of Trustee shall not be changed without Trustee's written consent. In the case of revocation or withdrawal of property, Trustee shall have a reasonable time to transfer or deliver the property.
>
> **3.3 Rights Personal to Trustor Subject to Binding Non-Judicial Agreement.** The rights reserved by the Trustor are personal to Trustor and may not be exercised by Trustor's attorneys-in-fact appointed under a dully executed durable power of attorney or by any guardian of trustor's estate absent court order of a court of competent jurisdiction. Notwithstanding any other provision of this Agreement, such rights are *subject to* that certain Non-Judicial Agreement regarding the J. Thomas Bernard Revocable Living Trust Agreement ("TEDRA") of even date herewith and are not exercisable by Trustor unless and until Trustor obtains the court order required by such agreement and otherwise satisfies all of the requirements imposed by the TEDRA. *If and to the extent such TEDRA is determined to be unenforceable for any reason,* the restrictions on Trustor's right to revoke, modify, and/or withdraw property from this Trust as stated therein *shall be incorporated in this Agreement by reference* and shall remain fully enforceable against the Trustor.[24]

---

24 Clerk's Papers at 208 (emphasis added).

Article 3.2 of this trust makes clear that Tom could modify the March 2009 trust and that such modifications "shall be valid and fully effective" on written notice to the trustee.[25] Of course, this provision is subject to other material provisions of this trust.

Article 3.3 imposes additional conditions on modification of the trust beyond written notice to the trustee. Specifically, the Trust instrument states that modification is "*subject to*" the March TEDRA agreement.[26]

The Linger Beneficiaries point to Article 3.3 to assert that this provision incorporates the terms of the March TEDRA agreement into the trust instrument. We disagree.

"Considerable caution must be exercised in applying the doctrine of incorporation by reference."[27] The reference "must show an intention on the part of the testator to incorporate or adopt the document referred to. The intention of the testator to incorporate into a will a paper or document must clearly appear. . . ."[28] Additionally, it "must clearly and definitely describe or identify the documents intended to be incorporated, or render them capable of identification by extrinsic evidence, so that no room for doubt can exist as to what papers were meant."[29]

---

[25] Id.

[26] Id. (emphasis added).

[27] Baarslag v. Hawkins, 12 Wn. App. 756, 763, 531 P.2d 1283 (1975).

[28] Id. (quoting 94 C.J.S. WILLS § 163 (1956)).

[29] Id.

Here, Tom's decision to use the term "subject to" in Article 3.3 is significant. It shows that he intended the primary relationship between the trust instrument and the March TEDRA agreement to be conditional, not one of incorporation.

This conclusion is supported by examining the definitions of these terms. "Incorporate" is defined as "[t]o combine with something else" and "[t]o make the terms of another (esp. earlier) document part of a document by specific reference."[30] "Subject" is defined as "[c]ontingent or dependent."[31]

Further, the plain words of this article also show that Tom intended that incorporation of the provisions of the March TEDRA agreement into the trust was conditioned on the happening of future events. The first clause of the last sentence of this article conditions incorporation of the March agreement on "*if and to the extent such TEDRA is determined to be unenforceable*."[32] And the use of the words "***shall be incorporated** in this Agreement by reference . . .*" further conditions incorporation on a future event following the effective date of the trust.[33]

Thus, the plain language of the trust shows that the substantive requirements of the March TEDRA agreement would not be combined *into* the

---

[30] BLACK'S LAW DICTIONARY 834 (9th ed. 2009).

[31] AMERICAN HERITAGE DICTIONARY 1788 (3d ed. 1992).

[32] Clerk's Papers at 208 (emphasis added).

[33] Id. (emphasis added).

trust instrument itself, absent a determination that the March TEDRA agreement was unenforceable.

Accordingly, when we apply the plain meaning of "subject to" in this context, we conclude that modification of this March 2009 trust was also contingent on compliance with the provisions of the March TEDRA agreement as it then existed or was later amended. Tom's intent in Article 3.3 was to require compliance with such provisions of this agreement as a condition to modifying the trust.

A necessary implication of this wording and structure is that the March TEDRA agreement could be modified without modifying the terms of the trust. The terms of the trust itself would only be modified upon incorporation, only triggered by a determination that the agreement was unenforceable.

Our conclusion is consistent with Tom's counsel's, one of the drafting attorneys, explanation of the reason for preparing these two instruments in the ways stated:

> The Three Steps [stated in the March TEDRA agreement] were intentionally **not incorporated** into the [March 2009] Revocable Living Trust agreement, **except** in the unlikely event [that] the March TEDRA Agreement was determined to be unenforceable (see Revocable Trust agreement, Paragraph 3.3). This was done so that, provided the March TEDRA Agreement was not determined to be unenforceable, the delivery by Tom to his trustees of "written notice thereof" would be all that was required for Tom to unequivocally manifest his intention to revoke or modify the Estate Planning Documents (see Revocable Trust agreement, Paragraph 3.2), provided that any such amendment would be **"subject to"** the contractual rights (if any) conferred upon James in the March TEDRA Agreement, as it may be amended.[34]

---

[34] Clerk's Papers at 786 (some emphasis added).

A related question is whether the March 2009 will incorporates the provisions of the March 2009 TEDRA agreement. We conclude that the will does not incorporate these provisions.

Tom's March 2009 will contains a similar provision to that in the March 2009 trust. Specifically, it states:

> This Will is **subject to** that certain Non-Judicial Agreement regarding the J. Thomas Bernard Revocable Living Trust Agreement of even date herewith.[35]

Noticeably absent is any mention of incorporation of the provisions of the Non-Judicial Agreement Re Trust Pursuant to RCW 11.96A, effective as of March 27, 2009. For the reasons we already discussed with respect to the March 2009 trust, the provisions of the March TEDRA agreement were never incorporated into the will itself. We conclude that modification of the March 2009 will was also "subject to" compliance with the terms of the March 2009 TEDRA agreement.

### Terms of the March TEDRA Agreement

As just discussed, modification of both the trust and will is conditioned on satisfying the provisions of the separate March TEDRA agreement as it then existed or was later modified. Accordingly, we must determine the terms of the March TEDRA agreement at the time that Tom executed the first amendment to trust and the first codicil.

The plain language of the March TEDRA agreement states:

---

[35] Id. at 7 (emphasis added).

[A]lthough both the Trust and the Will remain revocable and/or modifiable by Tom during his lifetime, the Parties agree that *no exercise of Tom's Modification Powers over either or both of the Trust and/or the Will shall be effective unless and until:*

    i. Tom files a petition for a hearing under RCW 11.96A in King County Superior court which clearly and specifically sets forth a particular proposal for an exercise of his Modification Powers,

    ii. timely provides James with a summons for such hearing pursuant to RCW 11.96A.100 (and otherwise complies with the substantive and procedural provisions of RCW 11.96A), and

    iii. as a result of such a hearing, the court issues an order approving the exercise of some or all of the particular Modification Power(s) expressly requested in Tom's petition.

    Accordingly, the Parties expressly acknowledge and agree that any exercise by Tom of his Modification Powers over the Trust and/or Will without first obtaining such a court order (and otherwise complying with the terms of this Agreement) shall be null and void.[36]

This agreement imposes three further requirements for modification of the trust beyond the requirement of written notification to the trustees imposed by Article 3.2 of the trust. Namely, the March TEDRA agreement requires that Tom petition for a hearing (specifically stating the proposed modifications), serve James with a summons for that hearing, and obtain a court order as a result of that hearing.

The next question is whether these terms were later modified by the August TEDRA agreement. This inquiry involves two questions. First, whether the March TEDRA *could be* modified by a second TEDRA agreement. Second,

---

[36] Id. at 429 (emphasis added).

if so, whether the August TEDRA agreement modified the March TEDRA agreement's three requirements.

First, we must determine whether the March TEDRA *could be* modified by another TEDRA agreement. The Karp Beneficiaries argue that the trial court erred when it concluded that the March TEDRA agreement expressly required a court order to modify it and that the March TEDRA agreement could not be nonjudicially amended. We agree.

As the trial court correctly recognized in its oral decision, "The case law is clear that parties to an agreement setting forth restrictions or limitations on modifications to a contract are free to later waive, supersede or revoke those limitations and restrictions."[37] The court cited to Smyth Worldwide Movers, Inc. v. Whitney for the following proposition: "If the parties to an action made by stipulation consent to the entry of a judgment, we know of no reason why they cannot also consent to its vacation or modification . . . ."[38]

But after acknowledging these general principles, the court commented, "[T]hat is not the scenario here."[39] It concluded that the March TEDRA agreement could not be modified, stating:

> **The March TEDRA agreement expressly provided that the parties could not modify that agreement without prior court approval.** Under TEDRA, upon filing the agreement, the agreement is equivalent to a final court order, binding on all persons interested in the estate or trust. Thus, this Court can only

---

[37] Clerk's Papers at 810-11.

[38] Id. at 810 (citing 6 Wn. App. 176, 179, 491 P.2d 1356 (1971).

[39] Id. at 811.

17

construe the March agreement as a court order mandating that the March agreement could not be modified or rescinded without prior court approval. By invoking the jurisdiction and authority of the court, the parties could not waive or rescind the court order requiring prior court approval for modification.[40]

But the March TEDRA agreement is silent on whether the parties could modify that agreement without prior court approval. The court misread this agreement to say otherwise.

The plain language of the March TEDRA agreement provides that the three requirements apply to an exercise of Tom's "Modification Powers" over "*either or both of the Trust and/or the Will*."[41] The March TEDRA agreement is not either of these two.

The term "Modification Powers" is expressly defined in the March TEDRA agreement:

> b. **Power to Revoke**. Pursuant to Article 3 of the Trust, Tom has reserved the right (a) to revoke the Trust in its entirety, (b) to partially revoke or modify the Trust, and (c) to withdraw from the operation of the Trust any part or all of the Trust estate. Moreover, under Washington State law, Tom reserves the right at any time to amend or revoke the will. *Collectively, the rights described in the immediately two preceding sentences shall be referred to as Tom's "Modification Powers."*[42]

Accordingly, Tom's "Modification Powers" include: (1) the right to revoke the Trust in its entirety, (2) the right to partially revoke or modify the Trust, (3) the right to withdraw part or all of the Trust estate, and (4) the right to amend or

---

[40] Id. (emphasis added).

[41] Id. at 429 (emphasis added).

[42] Id. 428-29 (emphasis added).

revoke the will.[43] Thus, modification of the underlying March TEDRA agreement was not an exercise of these "Modification Powers."

Consequently, the plain language of the March TEDRA agreement indicates that the three requirements do not apply to modification of the March TEDRA agreement itself.

As the Karp Beneficiaries point out, this conclusion is consistent with the purpose and policies of the TEDRA statute and Washington common law.

The legislature expressly stated that the "overall purpose" of TEDRA is "to provide nonjudicial methods for the resolution of matters, such as mediation, arbitration, and agreement."[44] Moreover, this appears to be consistent with the practice in trusts and estate, as illustrated by the following declaration from Professor Karen E. Boxx of the University of Washington School of Law:

> Allowing the parties who initially reached a non-judicial resolution to a matter involving a trust or estate to subsequently change their agreement regardless of whether the original agreement or a memorandum of the agreement was filed with the court is without question within the intent and purpose of TEDRA.[45]

The trial court erred when it concluded that the March TEDRA agreement could not be modified by the August TEDRA agreement.

The Linger Beneficiaries argue that the express language placing restrictions on modification also encompasses the March TEDRA agreement itself. They focus on the words "*any exercise*" to argue that the March TEDRA

---

[43] See id.

[44] RCW 11.96A.010.

[45] Clerk's Papers at 537.

19

agreement "explicitly restricted 'any exercise' of Tom's modification powers without complying with the modification restrictions." But, as discussed previously, the plain language of the March TEDRA agreement indicates that the three-step process applies only to Tom's "Modification Powers" over the trust or the will. The Linger Beneficiaries' argument to the contrary is not persuasive.

Second, because we conclude that the March TEDRA agreement could be modified by a second TEDRA agreement, we look to the August TEDRA agreement to determine if it modified the March TEDRA agreement's modification requirements.

The August TEDRA agreement acknowledged the three requirements imposed by the March TEDRA Agreement. It also recognized that TEDRA permits parties to execute a written agreement and that upon filling the agreement will be the equivalent of a final court order. It then stated:

> 5. **Amendment.** Tom desires, and James desires for Tom, to modify Article 8 [of the March 2009 trust instrument] in the form of the attached Exhibit A [first amendment to trust] and his Will in the form of the attached Exhibit B [first codicil to will]. The Parties agree and acknowledge that because the Modification Restrictions are imposed solely by virtue of the Agreement between the Parties, the Parties agree and represent that they are the sole necessary parties and have the power to modify such restrictions by further agreement. Additionally, and in any event, by virtue of RCW 11.96A.230, once this Amended [August TEDRA] Agreement (or a summary memorandum of such agreement) is filed, *this Amended [August TEDRA] Agreement will satisfy the [March TEDRA] Agreement's requirement to obtain a court order prior to any exercise of Tom's Modification Powers. Accordingly, the Parties agree that this Amended [August TEDRA] Agreement is a more efficient method of enabling Tom to exercise such powers.*[46]

---

[46] Id. at 437 (emphasis added).

Another provision stated:

> **b. Amendment.** The Parties agree that the [March TEDRA] Agreement is hereby amended to provide that notwithstanding any provision of the Agreement, Trust or Will, the Parties agree that the Trust and Will are hereby amended as of the effective dates of such documents in the manner provided in the attached Exhibits A and B, respectively. Following the execution of the First Amendment and the First Codicil, the Modification Restrictions shall remain in full force, subject to further unanimous amendment of the Parties.[47]

Overall, these provisions do not substantively change the three requirements in the March TEDRA agreement. Rather, the use of the term "satisfy" in the first of the two previous provisions shows that Tom and James were not trying to change the March TEDRA agreement's requirements but instead, were trying to comply with them. Thus, we consider whether they did so.

*Substantial Compliance*

The next question that we decide is whether Tom substantially complied with the modification requirements set forth in the trust and in the March TEDRA agreement. By executing the August TEDRA agreement and filing a memorandum of this agreement, we hold that he did.

"The rule is that the settlor of a trust has the power to revoke the trust if and to the extent that, by the terms of the trust, he reserved such a power. Where the trust instrument specifies the method of revocation, only that method can be used."[48]

---

[47] Id. at 438.

[48] In re Estate of Button, 79 Wn.2d 849, 852, 490 P.2d 731 (1971) (citations omitted).

21

In <u>Williams v. Bank of California N.A.</u>, the supreme court held that the doctrine of substantial compliance may be sufficient to validate a trust amendment.[49] The supreme court defined substantial compliance to mean "closely in conformance."[50]

There, the supreme court concluded that there was substantial compliance to uphold the trust amendment in question.[51] The court stated that "the procedure used in adopting the amendment followed rather closely the method provided in the trust agreement."[52] It also stated that "there is no question concerning intent, requiring unyielding conformance to [the amendment provision] in this instance would only frustrate intent."[53]

This court also considered the validity of an amendment under the doctrine of substantial compliance in the case <u>In re Estate of Tosh</u>.[54] There, the trust provided that it could be amended by the trustor "by a duly executed instrument filed with Trustee."[55] The parties attempted to amend the trust by "simply inserting a new page six into the previously executed document."[56]

---

[49] 96 Wn.2d 860, 867-68, 639 P.2d 1339 (1982).

[50] <u>Id.</u> at 866.

[51] <u>Id.</u> at 868.

[52] <u>Id.</u>

[53] <u>Id.</u> at 866-67.

[54] 83 Wn. App. 158, 920 P.2d 1230 (1996).

[55] <u>Id.</u> at 161-62.

[56] <u>Id.</u> at 161.

This court acknowledged that "[t]he record establishe[d] the clear intent of the trustor to effect an amendment to the trust document, and a reasonable belief on his part that he had done so."[57] But it also stated:

> [W]e are satisfied that merely substituting a page of a trust agreement is not a 'duly executed instrument.' A more formal procedure is required. The substituted page was not initialed, signed, or witnessed in writing. The date at the bottom of the substituted page remained unchanged. No addendum or attachment was added to the trust instrument. Indeed, nothing on the face of the document indicated that it had been amended.[58]

In concluding that the amendment in that case was invalid, this court distinguished Williams on the basis that "no close conformity occurred" and on the basis that in Williams, "the requirements were eventually complied with."[59] This court stated that "[c]lear evidence of both intent and belief cannot substitute for actually, or substantially, doing what is required."[60]

Here, as we previously discussed in this opinion, Article 3.2 of the trust required Tom to give written notice to the trustees. In this case, there is no dispute that Tom gave proper written notice of modification of this trust to the trustees. Thus, Article 3.2 is not at issue here.

Article 3.3 of the trust and the will both provide that Tom's right to modify was also subject to the requirements of the March TEDRA agreement. This agreement expressly required Tom to do three things. First, he had to petition

---

[57] Id.

[58] Id. at 162.

[59] Id.

[60] Id.

the court for a hearing under RCW 11.96A and "clearly and specifically" set forth a particular proposal to exercise his reserved power to modify the March 2009 trust or will.[61] Second, Tom was to provide James with a summons for the hearing.[62] This included otherwise complying with RCW 11.96A. Third, Tom was required to obtain an order approving his exercise of his right to modify.[63] Tom's compliance with these requirements is at issue.

Rather than utilizing the exact procedures set forth in the March TEDRA agreement, Tom and James substantially complied with these requirements by executing the August TEDRA agreement and later filing a memorandum of this agreement. The record indicates that Tom deemed the procedures utilized in August to be a more efficient method for him to modify the trust and will under the circumstances.

In the August TEDRA agreement, the parties expressly acknowledged "that Article 3.3 of the Trust and the [March TEDRA] Agreement require Tom to [follow the three-step process] in order to exercise his retained right to modify the terms of the Trust or Will."[64] The August TEDRA agreement also stated:

> **5. Amendment.** Tom desires, and James desires for Tom, to modify Article 8 [of the March 2009 trust] in the form of the attached Exhibit A [first amendment to trust] and his Will in the form of the attached Exhibit B [first codicil]. The Parties agree and acknowledge that because the Modification Restrictions are

---

[61] Clerk's Papers at 429.

[62] Id.

[63] Id.

[64] Id. at 436.

imposed solely by virtue of the Agreement between the Parties, the Parties agree and represent that they are the sole necessary parties and have the power to modify such restrictions by further agreement. Additionally, and in any event, by virtue of RCW 11.96A.230, once this Amended [August TEDRA] Agreement (or a summary memorandum of such agreement) is filed, *this [August TEDRA] Agreement will satisfy the [March TEDRA] Agreement's requirement to obtain a court order prior to any exercise of Tom's Modification Powers. Accordingly, the Parties agree that this Amended [August TEDRA] Agreement is a more efficient method of enabling Tom to exercise such powers.*[65]

The emphasized language in this provision shows the parties' clear intent to satisfy the modification requirements in the March TEDRA agreement. It also shows that they believed this to be a more efficient method than petitioning the court, conducting a hearing, and obtaining an order entered by a judge. This election is completely consistent with the policy of TEDRA, which promotes efficiency through nonjudicial methods for resolution of matters.[66]

Most importantly, the procedures stated in the August TEDRA agreement and followed by the parties substantially comply with those stated in the March TEDRA agreement.

First, Tom elected not to petition for a hearing under RCW 11.96A to obtain approval to modify the trust and his will of March 25, 2009. Instead, he and James agreed, in writing, to the express terms of the modifications to each, as evidenced by both signing the August TEDRA agreement. This agreement

---

[65] Id. at 437 (emphasis added).

[66] See RCW 11.96A.010 ("The overall purpose of this chapter is . . . to provide nonjudicial methods for the resolution of matters, such as mediation, arbitration, and agreement.").

25

includes as attachments unsigned copies of the first codicil and the first amendment to trust, specifying the exact modification to each sought.

Second, Tom did not provide James with a summons for the hearing described in the prior paragraph of this opinion. Instead, Tom and James agreed, in writing, that both the will and the trust should be modified in accordance with the express terms of the August TEDRA agreement. Because the only parties to the agreement stipulated to the result, it is unclear what purpose the hearing that the Linger Beneficiaries argue should have occurred would have accomplished. We see none.

Third, there was no hearing and no court order entered by a judge approving the modifications. Instead, the parties stipulated, in writing, that the procedures of the August TEDRA agreement were sufficient to satisfy the requirements of the March TEDRA agreement.

Significantly, counsel for Tom filed with the court a memorandum summarizing this agreement. RCW 11.96A.230(2) states, "On filing the agreement or memorandum, the agreement **will be deemed approved by the court and is equivalent to a final court order** . . . ."[67] Although this memorandum is not in the record, the parties do not dispute that it was filed.

The filing with the superior court of the memorandum made the August TEDRA agreement, by operation of law, one "deemed approved by the court" and "equivalent to a final court order."[68] Accordingly, the final requirement of the

---

[67] (Emphasis added.)

[68] RCW 11.96A.230.

26

March TEDRA agreement, obtaining a court order, was fulfilled by this filing under the plain words of RCW 11.96A.230.

In sum, the August TEDRA agreement between Tom and James substantially complied with the provisions of the March TEDRA agreement. Although Tom utilized a different method than the one expressed in the March TEDRA agreement, the method he utilized closely followed the March TEDRA agreement's process. The first amendment to trust, effective as of August 27, 2009, and the first codicil of even date were not void as a matter of law.

The Linger Beneficiaries argue that there was no substantial compliance with the provisions of the March TEDRA agreement. They are wrong.

First, they argue that the first requirement to petition a court for a hearing was not substantially complied with because "Tom desired that a court would review the modifications sought to be made." That is possible.

But even if we agreed that Tom desired a court to review the proposed modifications, it is clear that James reviewed and approved the changes. Why court intervention under these circumstances would be required is left unexplained. This is particularly true in view of the fact that TEDRA, to which Tom specifically referred in both TEDRA agreements, permits an agreement to be "deemed approved" on the filing with the court of the memorandum of the agreement.[69] In short, TEDRA contemplates that court review of all agreements is not required.

---

[69] See RCW 11.96A.230(2).

Second, the Linger Beneficiaries correctly concede that it "is conceivable that James' execution of the August TEDRA agreement was substantial compliance with the notice provision to James." But they then argue that the notice requirement was not met because "all interested parties" must also receive notice.

But the notice requirement in the March TEDRA agreement was imposed solely by virtue of the March TEDRA agreement, and it only required notice to James. It did not require notice to anyone else. It states that Tom must "timely provide[ ] James with a summons for such hearing pursuant to RCW 11.96A.100 (and otherwise compl[y] with the substantive and procedural provisions of RCW 11.96A)." The Linger Beneficiaries fail to explain how the notice requirement of the March TEDRA agreement requires notice to them. Thus, their argument is not persuasive.

Third, they argue that the third requirement in the March TEDRA agreement was not substantially complied with because the court did not issue an order before the amendments occurred. They also argue that "equivalent" to a court order is not the same as "obtaining a court order." This argument makes little sense in the context of this discussion about the application of the doctrine of substantial compliance. But as we already discussed, there was substantial compliance with the court order requirement by the filing of the memorandum of the August TEDRA agreement.

Fourth, the Linger Beneficiaries argue that substantial compliance requires "near perfect compliance" and that the changes to the trust "substantially

changed Tom's estate plan." But substantial compliance does not look to the substantive changes resulting from the amendment. Rather, it focuses on the procedures used to institute those changes.[70] Thus, this argument is not analytically relevant.

Lastly, the Linger Beneficiaries make a number of arguments that the August TEDRA agreement did not comply with the procedural and substantive requirements of TEDRA. For the reasons that follow, we reject these arguments.

These arguments involve interpretation of the TEDRA statute. When interpreting a statute, we seek to determine and follow the legislature's intent.[71] "If the statute's meaning is plain, we give effect to that plain meaning as the expression of the legislature's intent."[72]

First, the Linger Beneficiaries argue that the August TEDRA agreement did not resolve a "matter" as defined by TEDRA. This is incorrect.

RCW 11.96A.030(2) states:

> "Matter" includes *any* issue, question, or dispute involving:
>
> . . .
>
> (c) The determination of any question arising in the administration of an estate or trust . . . that may include, without limitation, questions relating to: (i) The construction of wills, trusts . . . and other writings . . . .

---

[70] See Williams, 96 Wn.2d at 866.

[71] See Bostain v. Food Express, Inc., 159 Wn.2d 700, 708, 153 P.3d 846 (2007).

[72] Id.

The plain words of this definition of "matter" make clear the broad scope of this term. There simply is no persuasive argument here that the subject of the TEDRA agreement did not fall within this definition.

Even if we were required to go beyond the plain words that define the very broad scope of this term, comments to the Senate Bill by the Washington State Bar Association Real Property, Probate & Trust Section support this conclusion:

> The term "matter" establishes the issues, questions and disputes involving trusts and estates that can be resolved by judicial or nonjudicial action under the Act. This term is meant to apply broadly and is intended to encompass matters traditionally within the exclusive province of the courts. This is consistent with the overall purpose of the Act, which is to foster nonjudicial resolution of issues confronting estates and trusts.[73]

Second, the Linger Beneficiaries argue that Tom did not give notice to or obtain the signatures of "all parties" as required by TEDRA. Specifically, the Linger Beneficiaries argue that they were entitled to notice under RCW 11.96A.110 and that their signatures were required to create a TEDRA agreement under RCW 11.96A.220. They are again wrong.

RCW 11.96A.110 provides that in judicial proceedings requiring notice, the notice must be personally served on all parties or the parties' virtual representatives.

---

[73] WSBA REAL PROPERTY, PROBATE & TRUST SECTION, COMMENTS TO THE TRUST AND ESTATE DISPUTE RESOLUTION ACT TEDRA § 104(1) (RCW 11.96A.030) – Matter at 1, (1999), available at www.wsbarppt.com/comments/tedra99.pdf.

RCW 11.96A.220 through 11.96A.250 provide "a binding nonjudicial procedure to resolve matters through written agreements among the parties interested in the estate or trust."[74]

Whether the Linger Beneficiaries were "parties" for purpose of the August TEDRA agreement is the issue. We hold they were not.

TEDRA defines a "party" as any member of a listed category who "has an interest in the subject of the particular proceeding . . . ."[75] One of the listed categories is "trust beneficiaries."[76]

In In re Estate of Becker, the supreme court looked to the definition of "party" in TEDRA and observed that was limited to one "'who has an interest in the subject of the particular proceeding.'"[77] There, the supreme court concluded that a surviving spouse who received nothing under the decedent's will was a person interested in the decedent's estate for purposes of TEDRA.[78]

Here, the Linger Beneficiaries are contingent trust beneficiaries. This appears to fall within the category of "trust beneficiaries." But in order to be a "party," the Linger Beneficiaries must also "[*have*] *an interest* in the subject of

---

[74] RCW 11.96A.210.

[75] RCW 11.96A.030(5).

[76] RCW 11.96A.030(5)(e).

[77] In re Estate of Becker, 177 Wn.2d 242, 247, 298 P.3d 720 (2013) (quoting RCW 11.96A.030(5)).

[78] Id.

31

the particular proceeding."[79] The statutory language indicates that the interest must be a present interest. It further indicates that the interest is specific to the "particular proceeding" at issue. The Linger Beneficiaries had no such interest at the time of the August TEDRA agreement, which was prior to James's death and Tom's death.

In Pond v. Faust, the supreme court concluded that a court has no authority to inquire into the validity of a will prior to the death of the maker, to determine the competency of the maker.[80] A Florida court cited Pond in concluding that a guardian cannot contest the validity of a revocable trust during the settlor's lifetime based on undue influence.[81] This is because "a revocable trust is a unique instrument which has no legal significance until the settlor's death."[82] This result arises from the same principle announced in Pond.

Further, California courts have noted a difference in a beneficiary's interest in revocable and irrevocable trusts.[83] "With the creation of an irrevocable trust, trust beneficiaries acquire a vested and present beneficial interest in the trust property, and their interests are not subject to divestment as with a

---

[79] RCW 11.96A.030(5).

[80] 90 Wash. 117, 120-21, 155 P. 776 (1916).

[81] Ullman v. Garcia, 645 So. 2d 168, 170 (Fla. Dist. Ct. App. 1994).

[82] Id.

[83] See, e.g., Empire Props. v. County of Los Angeles, 44 Cal. App. 4th 781, 787, 52 Cal. Rptr. 2d 69 (Cal. Ct. App. 1996).

revocable trust. Thus, the nature of a beneficiary's interest differs materially depending on whether the trust is revocable or irrevocable."[84]

Here, it is undisputed that the subject of the August TEDRA agreement dealt with Tom's first amendment to trust and his first codicil. It is also undisputed that the trust was revocable and that this transaction was conducted while the trustor was still alive. Accordingly, the Linger Beneficiaries did not then have a legally cognizable interest at the time of the August TEDRA agreement. Moreover, because the subject of the proceeding was modification of the trust and will, the Linger Beneficiaries fail to show that they had an interest in this particular proceeding.

For these reasons, they were not proper parties for purpose of this agreement.

Finally, we address two other specific concerns that the trial court identified when it invalidated the first amendment to trust and the first codicil as a matter of law. The court stated: (1) "If this court gives full effect to Tom's intent as set forth in the March TEDRA agreement, then it cannot enforce that August agreement entered in contravention of the terms of the prior agreement"; and (2) "[T]he modifications to the trust and will were made prior to the entry of the TEDRA agreement allegedly giving the authority to modify or revoke."[85] Each of these concerns will be addressed in turn.

---

[84] Id. at 787.

[85] Clerk's Papers at 814-15, 811.

First, as discussed earlier in this opinion, the August TEDRA agreement stated that it "will satisfy" the March TEDRA agreement requirements. The plain language of the August TEDRA agreement indicates that Tom recognized the process set out in March and intended to comply with it, using a more efficient method. This is not a contradictory intent.

Second, the trial court concluded that the modifications to the trust and will were invalid because they were made prior to the filing of the August TEDRA agreement. In reaching this conclusion, the court noted that the memorandum of the binding agreement was not filed with the court until February 2, 2010.[86] The trial court also noted that James did not sign the agreement until September 23, 2009.[87] Neither reason supports the court's conclusion.

RCW 11.96A.230(1) states that any party "*may* file the written agreement or a memorandum summarizing the written agreement with the court . . . ." It also states that "[f]ailure to complete any action authorized or required under this subsection does not cause the written agreement to be ineffective and the agreement is nonetheless binding and conclusive on all persons interested in the estate or trust."[88]

Accordingly, filing is permissive, not mandatory. But even if the agreement was not filed until a later date, the plain language of TEDRA shows that the filing date is irrelevant to the effectiveness of the agreement.

---

[86] Id. at 812.

[87] Id.

[88] RCW 11.96A.230(1).

Further, although James did not sign the agreement until September 23, by its express terms, the August TEDRA agreement expressly states that it is effective as of August 27, 2009. The August TEDRA agreement, the first amendment to the trust, and first codicil were all effective on the same day— August 27, 2009.

In sum, the August TEDRA agreement substantially complied with the modification process set out in the March TEDRA agreement. Further, it complied with the relevant provisions of TEDRA.

The Karp Beneficiaries argue in the alternative that the August TEDRA agreement modified the terms of the March TEDRA agreement and that Tom strictly complied with the modification requirements. Because we conclude that the August TEDRA agreement between Tom and James substantially complied with the provisions of the March TEDRA agreement, we need not address this argument.

## RIGHT TO APPEAL

The Karp Beneficiaries, on behalf of themselves, the estate and the trust, argue that the trial court erred when it concluded that the personal representative and trustee cannot appeal a summary judgment ruling invalidating the first codicil and first amendment to the trust. We agree.

As a threshold issue, the Linger Beneficiaries argue that the Karp Beneficiaries do not have standing to appeal this ruling because it was the trust and estate that petitioned for instructions from the court. But this argument ignores several facts.

First, the Karp Beneficiaries supported the petition for instructions by the personal representative of the estate and the trustees of the trust. Thus, they are aggrieved parties by virtue of the superior court's order vacating the commissioner's ruling.[89] Second, their briefing on appeal covers their arguments and those of the personal representative and trustees, who also timely appealed the orders before us.[90] Thus, the standing argument carries no weight.

For a ruling on a motion for revision, the superior court reviews the commissioner's decisions de novo based on the evidence and issues before the commissioner.[91] On appeal, this court reviews the trial court's ruling, not the commissioner's.[92]

Generally, a personal representative has a right to appeal an adverse decision in a will contest. The supreme court has stated, "Where a will is contested, whether before or after its probate, it is the duty of the executor to take all legitimate steps to uphold the testamentary instrument . . . ."[93]

---

[89] See State v. Taylor, 150 Wn.2d 599, 603, 80 P.3d 605 (2003) (An "aggrieved party" entitled to appeal is "one whose personal right or pecuniary interests have been affected.").

[90] See RAP 10.1(g) "In cases consolidated for the purpose of review and in a case with more than one party to a side, a party may (1) join with one or more other parties in a single brief, or (2) filed a separate brief and adopt by reference any part of the brief of another."

[91] In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999).

[92] In re Marriage of Fairchild, 148 Wn. App. 828, 831, 207 P.3d 449 (2009).

[93] In re Klein's Estate, 28 Wn.2d at 475.

Additionally, the supreme court has held, "A trustee, in his fiduciary or representative capacity, is aggrieved by a judgment which threatens the continuance of the trust in the form directed by the trustor, whether or not the beneficiaries appeal. He is more than a mere stakeholder."[94] Trustees "have standing and indeed a duty to appeal to protect the integrity and fundamental purpose of the trust."[95] Further, "A trustee who is a party to an action in representative capacity need not have a personal interest in the controversy to have a right to appeal if it is his duty to appeal in order to protect the interest of those whom he represents."[96]

In re Ferrall's Estate, a case from the Supreme Court of California, is also instructive.[97] There, Faye F. Hamilton petitioned the probate court for an order requiring the trustees to pay her certain sums.[98] The probate court ordered the trustees to pay from the income and corpus of the trust until further notice, and the trustees appealed.[99] On appeal, the supreme court considered whether the trustee could appeal such an order.[100]

---

[94] Retail Store Emps. Union, Local 1001 Chartered By Retail Clerks Int'l Ass'n, AFL-CIO v. Wash. Surveying & Rating Bureau, Wash. Bureau, 87 Wn.2d 887, 893, 558 P.2d 215 (1976).

[95] Id. at 894.

[96] Id.

[97] 33 Cal. 2d 202, 200 P.2d 1 (1948).

[98] Id. at 203.

[99] Id. at 204.

[100] Id.

The court cited the general rule that "trustees acting in their representative capacities cannot by an appeal litigate the conflicting claims of beneficiaries."[101] But it stated that the rule "has generally been limited, however, to prohibiting appeals by a trustee from orders merely determining which beneficiaries are entitled to share in a particular fund."[102] The court then stated:

> ***The trustee is permitted to appeal from an order of termination in order to give effect to trust purposes that can be served only by the continued administration of the trust. An appeal by a trustee may be necessary in order to determine whether the trial court properly ordered its termination.*** If such an appeal were not allowed, the trial court, when all beneficiaries consent, could completely disregard the provisions of the trust, even though there is no justification for a deviation from its terms. There is no substantial difference in this respect between an order that terminates a trust and an order that modifies it contrary to a specific provision. ***In either case the litigation does not involve merely the conflicting claims of beneficiaries to a particular fund, but concerns the performance of a duty by the trustees to protect the trust against an attack that goes to the very existence of the trust itself.***[103]

Finally, the court concluded, "To deny the trustees an appeal under these circumstances would render them helpless to prevent invasions of the corpus that might defeat the plan of the trustor or even destroy the trust itself."[104]

Here, under Washington law, it is the duty of the personal representative of Tom's will to take legitimate steps to uphold the testamentary instrument, including the first codicil.

---

[101] Id.

[102] Id.

[103] Id. at 205-06.

[104] Id. at 206.

Additionally, the motion for summary judgment was not litigation involving conflicting claims of beneficiaries. Rather, the motion for summary judgment sought to invalidate the first amendment to the trust as a matter of law. Accordingly, the trustee had a similar duty—to protect the plan of the trustor and protect the trust itself.

In sum, both the personal representative and the trustee had a right to appeal the order that declared the first amendment to the trust and the first codicil null and void as a matter of law.

The Karp Beneficiaries also rely on TEDRA for the proposition that the personal representative and trustee have a right to appeal, but we need not rely on this argument to conclude that they had this right.

The Linger Beneficiaries argue that "if the Trust were permitted to appeal the trial court's grant of summary judgment, it would place the Trustees in direct conflict with the beneficiaries of the Trust." But, as discussed previously, the trustee has a right to protect the plan of the trustor or defend the trust itself.

The Linger Beneficiaries rely on In re Cannon's Estate to argue that "where the dispute is about who has a right to receive, and there is no impairment of the estate, the estate itself does not have a right to appeal."[105] But this is not a dispute about who has the right to receive. Rather, it is a dispute about the validity of the first amendment to trust, a testamentary instrument. The Linger Beneficiaries' argument is not persuasive.

_____

[105] Respondent's Brief at 46 (citing In re Cannon's Estate, 18 Wash. 101, 50 P. 1021 (1897)).

**ATTORNEY FEES**

The Linger Beneficiaries request an award of attorney fees based on RCW 11.96A.150.

RCW 11.96A.150(1) states that "any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings." Additionally, the court may consider any factors it deems relevant and appropriate which may include "whether the litigation benefits the estate or trust involved."[106]

Here, the Linger Beneficiaries do not provide any persuasive reason for an award in their favor. Accordingly, we deny this request.

**SUMMARY**

To summarize, neither the first amendment to the trust effective on August 27, 2009 nor the first codicil of even date is void as a matter of law for the reasons before us. Tom substantially complied with the modification provisions of the trust and the March TEDRA agreement. Moreover, Tom filed a memorandum of the August TEDRA agreement, making the agreement one deemed approved by the court and equivalent to a court order. This agreement also complied with the relevant provisions of TEDRA.

We do not address the capacity of Tom to either enter into the two TEDRA agreements or make the testamentary instruments at issue in this case. Neither

---

[106] RCW 11.96A.150(1).

his capacity nor whether he was subject to undue influence at any relevant time is properly before us at this time. These and other issues are to be determined, in the first instance, by the trial court on remand.

We reverse the orders that are before us and remand for further proceedings.

_____
Cox, J.

WE CONCUR:

_____         _____
Leach, J.                        Dwyer, J.