# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In Re: | ) | No. 74320-1-I |
| | ) | |
| THE PETER J. AND MARJORY E. WAY LIVING TRUST. | ) | DIVISION ONE |
| | ) | |
| | ) | |
| GARY PETER WAY and KRISTIN KIRCHNER, | ) | UNPUBLISHED |
| | ) | |
| | ) | FILED: <u>November 28, 2016</u> |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARJORY E. WAY, trustee of the Peter J. and Marjory E. Way living trust, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Cox, J. — Gary Way and Kristin Kirchner appeal the trial court's order granting summary judgment to Marjory Way in this Trust and Estate Dispute Resolution Act (TEDRA) proceeding. Gary and Kristin fail to show there are any genuine issues of material fact over interpretation of the Peter J. and Marjory E. Way Living Trust.[1] Marjory is entitled to judgment as a matter of law. We affirm.

---

[1] We adopt the naming conventions of the parties.

Peter and Marjory Way married in September 2006. Peter made his last will and testament on February 29, 2012. On that same date, Peter and Marjory established the trust that is the subject of this litigation. Peter passed away in June 2012.

In June 2015, Marjory commenced this proceeding to obtain a determination of rights under the terms of the trust. Gary and Kristin opposed her petition and counterclaimed. Gary is Peter's son from Peter's prior marriage to Carol Way. Kristin married Greg, Carol's son from a prior marriage. Greg predeceased Kristin.

Gary and Kristin moved for partial summary judgment. Marjory made a cross motion for summary judgment. The trial court granted Marjory's cross motion and dismissed all counterclaims. The court also awarded her fees.

Gary and Kristin appeal.

## SETTLOR'S INTENT

Gary and Kristin argue that Peter did not intend for the trust to create a life estate in his property for Marjory. They claim she was only to inherit the condominium and a 2009 Toyota that she and Peter shared. They contend they were each to receive 50 percent of all of Peter's other property. We disagree.

Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[2] "A genuine issue of material fact exists if 'reasonable minds could differ on the

---

[2] Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014); CR 56(c).

facts controlling the outcome of the litigation.'"[3] We consider "all facts and make all reasonable factual inferences in the light most favorable to the nonmoving party."[4] We review de novo a trial court's grant of summary judgment.[5]

A court's paramount duty in construing a trust is to give effect to the settlor's intent.[6] That intent is determined from the instrument as a whole, and its specific provisions must be construed in light of the entire document.[7] If the language of the instrument is unambiguous, courts ascertain the settlor's intent from the language of the instrument itself without extrinsic evidence.[8] A trust's terms are not ambiguous unless the language is susceptible to more than one reasonable interpretation.[9] If extrinsic evidence is considered to resolve an ambiguity regarding the settlor's intent, it may not be considered to import an intention into the instrument that is not expressed therein.[10]

---

[3] Knight v. Dep't of Labor & Indus., 181 Wn. App. 788, 795, 321 P.3d 1275 (quoting Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)), review denied, 181 Wn.2d 1023 (2014).

[4] Scrivener, 181 Wn.2d at 444.

[5] Id.

[6] In re Estate of Bernard, 182 Wn. App. 692, 697, 332 P.3d 480, review denied, 181 Wn.2d 1027 (2014); see also RCW 11.12.230.

[7] In re Estate of Bernard, 182 Wn. App. at 704; see also Templeton v. Peoples Nat'l Bank of Wash., 106 Wn.2d 304, 309, 722 P.2d 63 (1986).

[8] In re Guardianship of Jensen, 187 Wn. App. 325, 331, 350 P.3d 654 (2015).

[9] In re Wash. Builders Benefit Trust, 173 Wn. App. 34, 75, 293 P.3d 1206 (2013).

[10] See In re Estate of Curry, 98 Wn. App. 107, 113, 988 P.2d 505 (1999)

Our courts attempt to give effect to every part of an instrument and must make a reasonable effort to reconcile seemingly inconsistent provisions.[11] The principles of construction applicable to wills also apply to trusts.[12]

The interpretation of a trust provision is a question of law that we review de novo.[13]

We start with consideration of paragraph 2 of the trust. That paragraph creates the trust estate. The estate is comprised of all property of Peter and Marjory, property which is described in three schedules: Schedules A, B, and C.

Schedule A describes their community property. Schedule B describes Marjory's separate property. Schedule C describes Peter's separate property.

We next consider paragraph 6 of the trust, Trust Beneficiaries. It provides:

> **Husband's Beneficiaries.** Upon the death of PETER J. WAY, his portion of the Trust Estate, to include his share of the property listed in Schedule A, as well as any separate property listed in Schedule C, shall be distributed in accordance with the terms and to the Beneficiaries named in *Schedule E*, attached.
> . . . .[14]

SCHEDULE E, to which the above provision refers, provides:

Pursuant to Paragraph 6 of the Declaration of Trust . . . the Trust Estate property of PETER J. WAY shall be distributed to the following Specific Beneficiaries upon the following terms:

---

[11] See In re Estate of Sherry, 158 Wn. App. 69, 76, 240 P.3d 1182 (2010); In re Estate of Wright, 147 Wn. App. 674, 684-85, 196 P.3d 1075 (2008).

[12] First Interstate Bank of Wash. v. Lindberg, 49 Wn. App. 788, 797-98, 746 P.2d 333 (1987).

[13] Wash. Builders Benefit Trust, 173 Wn. App. at 75.

[14] Clerk's Papers at 1573 (emphasis added).

**SPECIFIC BEQUESTS**:

In the event Marjory Way survives Peter Way then she shall inherit the real property condominium, Parcel . . . and the vehicle..., 2009 Toyota Highlander.

| | | |
|---|---|---|
| Gary Peter Way | son | 50% of *remainder*, if he pre-deceases, then 50% to his wife . . . if they were still married at the time of his death. |
| Kristin Kirchner | daughter-in-law | 50% of *remainder*. If she predeceases, then 50% to her then living children in equal shares.[15] |

Gary and Kristin contend this provision can only reasonably be interpreted to mean that the "remainder" of Peter's property (less the condominium and Toyota) is theirs "outright, free of trust, as their sole and separate property." To support this argument, they rely on the fact that the Specific Bequests provision in Schedule E "does not indicate" that their gifts of the remainder were in trust or that they were to be transferred into Trust A. We reject this untenable argument.

We consider paragraph 7 of the trust, which makes further provisions regarding the trust estate. It states:

> **Creation of Trust A and Trust B.** Upon the death of the first spouse [Peter], the surviving spouse [Marjory], as Trustee, shall divide the entirety of the Trust Estate . . . into two separate trusts, Trust A and Trust B, and shall continue to serve as Trustee for both Trusts.
> . . . . [16]

---

[15] Id. at 1585 (emphasis added).

[16] Id. at 1573.

The plain words of this provision direct the trustee to divide the "entirety of the" trust estate into Trust A and Trust B upon Peter's death. This provision makes clear that *all* of the trust estate created by paragraph 2 of the trust is to be divided into the two trusts upon Peter's death.

This paragraph 7 further states:

> **_Contents of Trust A_.** All of the property of The Peter J. & Marjory E. Way Living Trust owned by the deceased spouse [Peter], to include one half of the value of shared Property in Schedule A, as well as any separate property described in Schedule B or C, as applicable, shall be transferred to Trust A.
> . . . . [17]

The plain words of this provision specify how Trust A is funded. Specifically, one-half of the community property plus all of Peter's separate property fund Trust A. This is his entire ownership interest in the trust estate.

The further provisions of paragraph 7 to consider are the following:

> (ii) *Life Beneficiary of Trust A*. Upon the death of the deceased spouse [Peter] and the creation of Trust A, the surviving spouse [Marjory] shall become the **Life Beneficiary of Trust A**. The surviving spouse's [Marjory's] life estate interest in Trust A, entitles the surviving spouse [Marjory] receives [sic] all interest or other income from the trust property, to use the property, and to spend the trust property in any amount for his or her health, education, support and maintenance, in his or her accustomed manner of living.
> . . . . [18]

There can be no reasonable dispute that these provisions direct that Marjory, the surviving spouse of Peter, is the lifetime beneficiary of Trust A. Likewise, there can be no reasonable dispute that she is to receive all income

---

[17] Id.

[18] Id. at 1573-74 (emphasis added).

from the trust property and may spend the trust property for her health, education, support, and maintenance, as she pleases.

Our conclusions are buttressed by further provisions of the trust. For example, Paragraph 8, Administration of Trust A, provides as follows:

> ### Final Beneficiaries
>
> . . . .
>
> If PETER J. WAY is the first deceased spouse, then the **Final Beneficiaries** of Trust A shall be:
> 50% to GARY PETER WAY, per capita
> 50% to KRISTIN KIRCHNER, per stirpes
>
> . . .
>
> **Death of Life Beneficiary.** Upon the death of the Life Beneficiary, the Trustee shall distribute the property of Trust A to the appropriate Final Beneficiaries provided in this Paragraph 8.[19]

Reading these provisions together, we conclude that Peter intended to draw distinctions between the Life Beneficiary and Final Beneficiaries. Marjory is the former and Gary and Kristin are the latter. The plain words of the trust make clear that Marjory is entitled to the full benefit of the property in Trust A during her lifetime. Only after her passage are Gary and Kristin entitled to whatever may be left over in Trust A, as Final Beneficiaries.

Both parties argue that the trust is unambiguous. But they reach different conclusions about how to read the trust. This dispute is principally based on their conflicting interpretations of the word "remainder" in Schedule E.

We turn, then, to the word "remainder," a primary focal point of the parties' arguments. In determining the meaning of the word, we look to Black's Law Dictionary. It defines remainder as:

---

[19] Id. at 1574-75.

> A *future* interest arising in a third person — that is, someone other than the estate's creator, its initial holder, or the heirs of either — who is intended to take *after* the natural termination of the preceding estate.[20]

The most natural reading of this word, given the context, is that Peter's intent was to provide to Gary and Kristin 50 percent of his property in the *future*, after the expiration of Marjory's life estate ("the preceding estate"). This reading is most consistent with the fact that the other provisions of the trust that we discussed previously expressly provide for such a life estate for Marjory. That life estate in Trust A is funded by all of Peter's property at the time of his death. To read the word "remainder" otherwise, as Gary and Kristin argue, would write out of the trust the provisions of paragraphs 2, 7, and 8 of the trust. That would be inconsistent with the principle that we should consider all the words of this testamentary document, giving effect to all provisions, if possible.

Our conclusion about the correct reading of the word "remainder" is buttressed by our interpretation of the words "Specific Bequests" in paragraph 6 of the trust. These words address the disposition of the condominium and vehicle that Schedule E identifies as going to Marjory on Peter's death. Turning again to Black's Law Dictionary, the word "bequest" is defined as:

> The money or other property that a person arranges to give to someone or an organization *upon death*.[21]

Had Peter intended that, on his death, his property would go 50 percent each to Gary and Kristin, he would have used some variation of the word "bequest" to evidence that intent. But he used that word to describe part of the

---

[20] BLACK'S LAW DICTIONARY 1482 (10th ed. 2014) (emphasis added).

[21] BLACK'S LAW DICTIONARY 189 (10th ed. 2014) (emphasis added).

property to go to Marjory. That use is consistent with the provisions of paragraphs 7 and 8 that give her a life estate in Trust A.

However, in using the word "remainder," a word with a different meaning, to describe what Gary and Kristin would receive, it appears that Peter intended that they not immediately receive any of his property on his death. Rather, they are to receive whatever of Peter's property remains after Marjory's life estate in Trust A. Only this view of Peter's choice of words is consistent with the provisions of paragraphs 7 and 8 that we discussed earlier in this opinion.

In sum, adopting Gary's and Kristin's interpretation would render paragraphs 7 and 8 of the trust meaningless, violating a basic rule of construction applicable to such testamentary documents. Moreover, there is only one reasonable reading of the trust, making it unambiguous.

Gary and Kristin argue that the will and trust must be considered together and that these documents unambiguously provide that Marjory should only inherit the condominium and a 2009 Toyota. They further argue that Marjory's interpretation of the trust creates an inconsistency between the will and trust. Thus, they argue that the will controls and unambiguously provides that Marjory is only to inherit the condominium and 2009 Toyota. But these arguments rely on an inapplicable provision in Peter's will.

The property distribution paragraph in Peter's will states:

> **Trust.** I give all of my property and estate to the Trustee under [the] trust . . . to be distributed in accordance with the terms thereof. ***In the event the said trust shall have been revoked or declared invalid for any reason***, then I direct my Personal Representative to give all of my property and estate as follows:

9

> Condominium . . . to my wife, Marjory E. Way, together with the [2009 Toyota], to Marjory E. Way.
>
> The rest, residue and remainder of my estate I give, devise and bequeath 50% to my son, Gary Peter Way . . . and 50% to Kirstin Kirchner . . . .[22]

Gary and Kristin erroneously rely on the property distribution required in the event that the trust is revoked or invalidated to argue that Peter intended to provide Marjory with only the condominium and 2009 Toyota. But that provision is inapplicable here because the trust has not been either revoked or invalidated. Further, the first sentence of this paragraph explicitly states that Peter's property is to be distributed in accordance with the trust terms, which unambiguously provides Gary and Kristin with 50 percent of Peter's property in the future, after the expiration of Marjory's life estate. Thus, Gary's and Kristin's reliance on this paragraph in Peter's will is misplaced.

Gary and Kristin also argue that Peter intended the common meaning of "remainder" in the living trust as defined in the Cambridge Academic Content Dictionary. Under that definition, remainder is "the part that is left after the other parts are gone, used, or taken away."[23] But that definition differs from the Black's Law Dictionary definition stating that a remainder is "[a] *future* interest arising in a third person—that is, someone other than the estate's creator, its initial holder,

---

[22] Clerk's Papers at 1559 (emphasis added).

[23] CAMBRIDGE ACADEMIC CONTENT DICTIONARY, http://dictionary.cambridge.org/us/dictionary/english/remainder (last visited November 9, 2016).

or the heirs of either—who is intended to take after the natural termination of the preceding estate."[24]

The first definition does not convincingly compare with the second definition. This is particularly true when considering the word in context with the other provisions of the living trust. For the reasons already discussed, we rely on the second definition.

Gary and Kristin also request that we reinstate their breach of fiduciary duty counterclaim against Marjory if we determine that she owed them a fiduciary duty to distribute immediately to them the remainder of Peter's estate. We decline to do so for the reasons stated above.

To further support their interpretation of the living trust, Gary and Kristin make the following arguments in their reply brief that they did not make in their opening brief.

First, Gary and Kristin argue that this court should adopt their interpretation of the living trust because Gary would have inherited Peter's entire estate if Peter died without a will. Second, they argue that Marjory waived her right to inherit from Peter's estate by entering into the prenuptial agreement. Third, they argue that the last antecedent and the ejusdem generis rules of construction support their interpretation of the living trust. Lastly, Gary and Kristin argue that Peter and Marjory did not have to leave any remainder for Trust A, and did not do so, even though the living trust contains provisions for Trust A's creation. To support this argument, they rely on other provisions in the living

---

[24] BLACK'S LAW DICTIONARY 1482 (10th ed. 2014) (emphasis added).

trust essentially to argue that the creation of Trust A was optional. We do not consider these arguments as Gary and Kristin failed to comply with RAP 10.3(c).[25]

## EXTRINSIC EVIDENCE

Gary and Kristin rely on extrinsic evidence to support their interpretation of the living trust. Because the trust is unambiguous, extrinsic evidence cannot vary its terms. Moreover, certain extrinsic evidence is inadmissible hearsay.

### Hearsay

Gary and Kristin argue that the trial court improperly rejected certain notes by a legal assistant as inadmissible hearsay. We hold that the court properly rejected this evidence.

ER 803(a)(3) indicates which evidence is not excluded by the hearsay rule, even though the declarant is available as a witness, such as:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Gary and Kristin argue that the notes of a legal assistant to the attorney who drafted Peter's will fall within this hearsay rule exception.[26] They are mistaken.

---

[25] See also State v. Hudson, 124 Wn.2d 107, 120, 874 P.2d 160 (1994).

[26] Brief of Appellants at 19-20.

The drafting attorney's legal assistant, Kathleen Matzen, made shorthand notes during her meeting with the drafting attorney, which followed the attorney's meeting with Peter. Matzen testified that she drafted the living trust according to the attorney's instructions. Matzen did not attend the meeting with the Ways and had no personal knowledge of Peter's or Marjory's meeting with the drafting attorney. Matzen also stated that she did not "know personally what [Peter's or Marjory's] intents were."

Gary and Kristin first argue that the notes contain hearsay statements by Peter to "[the drafting attorney] and Matzen" regarding the terms of Peter's will. This assertion is factually incorrect. The record shows that Matzen was never present when Peter made any statements about his will, much less the trust that is before us. Thus, there is no showing in this record that the relevant "declarant," Peter, made any statements in Matzen's notes.

We note that for purposes of the rule, the relevant "declarant" is Peter, not the drafting attorney.[27] Here, Gary and Kristin attempt to use the drafting attorney's statements, not Peter's statements, to fill the gap. This is a misapplication of the rule.

Gary and Kristin also argue that the drafting attorney's statements of his "intent to draft or have Matzen draft at his direction" Peter's will and the living trust also fall within the rule. This is plainly wrong. The drafting attorney's state

---

[27] See Hong v. Children's Mem'l Hosp., 993 F.2d 1257, 1265 (7th Cir. 1993) (stating that the state of mind exception to Federal evidence rule against the admission of hearsay does not authorize receipt of a statement by one person as proof of another's state of mind).

of mind is not at issue. Peter's is. In short, this exception to the exclusion of hearsay does not apply.

In any event, the trial court properly excluded Matzen's notes on the basis that they exhibited an attempt to show an intent contrary to the unambiguous provisions of the trust. As previously stated, extrinsic evidence may not be considered to import an intention into the instrument that is not expressed therein.[28]

### Other Extrinsic Evidence

Gary and Kristin argue that the "surrounding circumstances" indicate that Peter did not intend to create Trust A upon his death. We disagree.

Gary and Kristin rely on Peter's and Marjory's prenuptial agreement to support this argument. But this document fails to resolve any ambiguity as to Peter's intent in the living trust.

Gary and Kristin specifically argue that the living trust served the same purpose as the prenuptial agreement—to protect "their testamentary wishes and powers." The prenuptial agreement designates Peter's and Marjory's separate property to "enable each to dispose of his or her assets as he or she wishes at death."

But Peter and Marjory executed the living trust six years after executing the prenuptial agreement. Due to this gap in time, the prenuptial agreement fails to show Peter's intent in the living trust. Additionally, as previously discussed, extrinsic evidence may not be considered to import an intention into the

---

[28] See Curry, 98 Wn. App. at 113.

instrument that is not expressed.[29]  If the prenuptial agreement showed an intention that is not expressed in the living trust, it cannot be considered in resolving any ambiguity as to Peter's intent in the living trust.  Accordingly, this argument is unpersuasive.

Gary and Kristin also rely on Peter's and Marjory's unfiled petition for dissolution of marriage, the dissolution decree, and the accompanying findings of fact and conclusions of law, to support their argument.  These documents do not support this argument for the same reason.

Gary and Kristin first state that the petition was still pending when Peter and Marjory signed the living trust.  But they also state that Peter and Marjory decided to execute the living trust rather than going forward with the dissolution of marriage.  Marjory testified that she and Peter decided not to go forward with the dissolution between the time they signed the dissolution documents and the time they signed the living trust.  Marjory also testified in her declaration that she and Peter restored their "happy marriage."

In sum, the record shows, and Gary and Kristin do not dispute, that Peter and Marjory did not pursue the dissolution of their marriage.  Rather, they executed the living trust months later.  Thus, the dissolution documents fail to show Peter's intent in the living trust.  Additionally, if the dissolution documents showed an intention that is not expressed in the trust, they cannot be considered in resolving any ambiguity as to Peter's intent in the living trust.

---

[29] Id.

## COUNTERCLAIMS & ABANDONED CLAIMS

Gary and Kristin assign error to the trial court's order dismissing their counterclaims against Marjory for breach of contract, fraud, and specific performance. They failed to provide argument for these claims in their opening brief. We deem them abandoned.[30]

## ATTORNEY FEES

*At Trial*

Gary and Kristin request that this court reverse the award of attorney fees to Marjory if this court reverses the trial court's decision. Because there is no showing that the trial court abused its discretion in awarding fees, we decline to reverse Marjory's attorney fees award.

*On Appeal*

Both parties seek attorney fees on appeal under RCW 11.96A.150. We award reasonable attorney fees to Marjory.

RCW 11.96A.150 provides this court with broad discretion to award attorney fees in a trust dispute.[31] In relevant part, the statute provides:

> [A]ny court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party; . . . (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable.

---

[30] Podbielancik v. LPP Mortg. Ltd., 191 Wn. App. 662, 668, 362 P.3d 1287 (2015).

[31] Wash. Builders Benefit Trust, 173 Wn. App. at 84.

16

Here, Marjory requests reasonable attorney fees against the principal of the living trust. This litigation benefited the trust because it clarified Peter's intent and the parties' rights. We award Marjory reasonable attorney fees, subject to her compliance with RAP 18.1(d).

We affirm the Order Granting Petitioner's Cross-Motion for Summary Judgment. We also award Marjory reasonable attorney fees, subject to her compliance with RAP 18.1(d).

Cox, J.

WE CONCUR: