IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| IN THE MATTER OF THE H. AND C.S. LIVING TRUST, | No. 86027-5-I |
| MICHELLE VITTITOW, | DIVISION ONE |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| AXEL STRAKELJAHN, individually, and Trustee of the H. and C.S. Living Trust, and SKYFALL 69, LLC, a Washington limited liability company, | |
| Appellants. | |

CHUNG, J. — Heinz Strakeljahn and his wife created a trust containing all their community property. After his wife's death, he executed a disclaimer of her share of community property and gifted real property out of the trust to his son. After the father's death, his daughter filed a petition under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, claiming that the gift was invalid under the terms of the trust and the father's disclaimer of property. The trial court agreed, determined the gift was invalid, and revoked the deed. We conclude the trust instrument allowed the distribution of the real property, and the gift was proper. Accordingly, we reverse the order revoking the deed and granting attorney fees to the daughter.

## FACTS

Heinz and Christa Strakeljahn had two children, Axel and Michelle.[1] Heinz and Christa signed a community property agreement declaring all of their assets to be community property. As part of their estate planning, they established the H. and C.S. Living Trust. Heinz and Christa served as co-Trustees, and subsequently amended the Trust Agreement solely to add Axel as co-Trustee.

Heinz and Christa funded the Trust with both real and personal property for the stated purpose of providing for their health, support, and maintenance. They deeded their real property—consisting of an apartment building in Tacoma, their primary residence and a vacant lot in Kent, and an apartment building in Burien—to the Living Trust. All assets of the Trust retained their character as community property, and any property transferred into the Trust during the joint lives of the Grantors would be deemed community property. The Grantors could revoke or amend the Trust during their joint lifetime.

The Trust Agreement provides that following the death of one of the Grantors:

> The entire beneficial interest in the Trust assets shall pass to the surveying [sic] Grantor and be held in the original Trust as the "Marital Trust," unless and to the extent that the surviving Grantor, as beneficiary, disclaims all or any portion of the Trust that is then considered to be a part of the deceased Grantor's estate. In such event, the disclaimed assets, which may be dissimilar in kind, but equal in value to the extent of the disclaimer, shall be transferred to the Shelter Trust and held and administered pursuant to the Shelter Trust terms herein.

---

[1] Michelle's last name is Vittitow. Due to the other family members' shared last name, to avoid confusion, we refer to the individuals by their first names. We intend no disrespect.

The assets in the Marital Trust would remain subject to the surviving Grantor's powers to amend or revoke. The Shelter Trust would be "neither amendable nor revocable by the surviving Grantor," and would consist of assets allocated by the Trustee pursuant to the disclaimer. The purpose of the Shelter Trust "shall be to provide for the surviving Grantor's health, support and maintenance to the extent that it has distributable income." The Trustee has no power or authority to distribute Shelter Trust assets in excess of Trust income, except under an annual "five and five power" which allows the Beneficiary to withdraw the greater of five percent of the principal or $5,000. Upon the death of the surviving Grantor, the Trustee was to administer specific distributions for individuals including grandchildren and then distribute the Trust assets in two equal portions to Axel and Michelle or to their next of kin.

Christa died in August 2019. At the time of her death, the Trust held assets worth around $5 million, including the real property Heinz and Christa had previously deeded to the Trust. Maurie Laufer, Heinz and Christa's longtime accountant, advised Heinz to disclaim up to $2,193,000 to the Shelter Trust in order to maximize the amount of Christa's estate that would pass tax-free upon his death. On December 5, 2019, Heinz executed a "disclaimer of interest," declaring:

> I, HEINZ STRAKELJAHN, a beneficiary under the Amended and Restated H. and C.S. Living Trust, originally dated July 11, 2016, (the "Trust") hereby disclaim, renounce and refuse to accept all rights, title, benefits and interest in that portion of the Trust assets that is part of the Estate of Christa Strakeljahn and to any interest I might have or acquire in said real property assets so that the disclaimed assets may be transferred to the "Shelter Trust" as provided for in the Trust.

This disclaimer was signed by Heinz individually, as well as by Heinz as Trustee and Axel as an individual. Heinz executed an identical version of this disclaimer again on February 14, 2020, except this version had an additional signatory, the attorney for the Trust.

In January and early February 2020, Heinz told Laufer that he wanted to revisit his estate planning documents so that Axel would receive 2/3 of the estate and Michelle would receive 1/3, rather than 50/50, because Axel had been managing all of the investment properties and deserved more of the estate. Specifically, Heinz wanted Axel to have the Tacoma apartment building. Laufer recommended a non-pro rata allocation of the disclaimed assets to fund the Shelter Trust by moving 100 percent of the Burien apartment building and some of the cash assets into the Shelter Trust, so that a total of not more than $2,193,000 would pass to the Shelter Trust, thereby minimizing estate taxes due at Heinz's death. Laufer prepared a new estate distribution proposal to this effect.

In May 2020, Heinz hired attorney Karol Whealdon[2] to fund the Shelter Trust and revise his estate plan in keeping with his wishes. Laufer and Whealdon advised Heinz that he could gift the Tacoma apartments to Axel during his life, which would further reduce estate tax. Whealdon drafted a deed to execute the gift of the Tacoma apartments to Axel and a deed to transfer the Burien apartments to the Shelter Trust. Heinz and Axel, as co-Trustees of the Living Trust "and pursuant to a disclaimer of interest executed by Heinz Strakeljahn dated February 14, 2020," signed a Trustee's deed transferring the Burien

---

[2] Formerly Karol Whealdon-Andrews.

apartments to the Shelter Trust. Heinz alone, as Grantor of the Marital Trust, signed a Trustee's deed granting the Tacoma apartments to Axel's LLC, Skyfall 69. Axel filed a real estate excise tax supplemental statement stating that he accepted the gift and would assume payment of the debt on the property. Heinz filed a gift tax return to report the gift.

Heinz died on April 27, 2022. In September, an attorney contacted Axel on behalf of Michelle, questioning the gifting of the Tacoma apartments during Heinz's lifetime. Axel's attorney responded that the Tacoma apartment was not an asset of the Trust and that Heinz had gifted the property from the Marital Trust as the surviving Grantor.

In July 2023, Michelle filed a TEDRA petition, requesting an order revoking or declaring invalid the gift of the Tacoma apartments and attorney fees and costs.[3] A commissioner considered the TEDRA petition and found the gift of the Tacoma apartments invalid under three separate theories. First, the commissioner determined that as a result of the disclaimer, Heinz "disclaimed his entire interest in Christa's estate, which included an undivided one-half interest in all Trust assets." As a result, "an undivided one-half interest in all Trust assets, including the Tacoma apartments, was required to [be] allocated to the Shelter Trust." Heinz did not have the authority to gift any assets allocated to the Shelter Trust such that the gift of her undivided one-half interest in the Tacoma apartments to Axel was invalid. Additionally, the commissioner held the gifting

---

[3] In the petition, Michelle named Axel, individually and as Trustee, as well as Skyfall 69, LLC as Respondents. Below and on appeal, Axel responds as the Trustee of the H. and C.S. Living Trust.

provision of the Trust did not support the gifting of a $2 million asset to Axel. Finally, Heinz alone signed the Trustee's deed for the Tacoma apartments, but the Trust required the co-Trustees to act jointly with respect to transactions, including transfers of real property. The commissioner revoked the Trustee's deed transferring the Tacoma apartments to Skyfall 69 and awarded fees and costs to Michelle.

In his capacity as Trustee, Axel moved for revision of the commissioner's decision under RCW 2.24.050 and LCR 7(b)(8). The court reviewed the record de novo and denied the motion for revision. The court adopted the commissioner's findings of fact and conclusions of law. The court found "that through the 2020 disclaimer, Heinz unambiguously disclaims the entirety of Christa Strakeljahn's estate, and section 5.4 of the Trust Agreement unambiguously requires that all disclaimed assets be transferred to the irrevocable Shelter Trust." The court concluded that the gift of the Tacoma apartments "was invalid because it included Christa Strakeljahn's undivided one-half interest in the Tacoma Apartments that was required to be allocated to the Shelter Trust and over which Heinz Strakeljahn had no authority to gift upon his execution of the disclaimer." The court also awarded attorney fees and costs to Michelle from the Trust.

Axel appeals.

## DISCUSSION

Axel as Trustee appeals the decision of the trial court denying revision of a commissioner's ruling. Commissioner rulings are subject to revision by the

superior court. RCW 2.24.050. The superior court reviews the commissioner's decisions de novo based on the issues and record before the commissioner. In re Est. of Bernard, 182 Wn. App. 692, 727, 332 P.3d 480 (2014). On appeal, we review the superior court's decision, rather than the commissioner's ruling. Id. at 728.

TEDRA provides the court with "full and ample power and authority . . . to administer and settle . . . all trusts and trust matters." RCW 11.96A.020(1). Given this broad grant of power, we must accord significant deference to a trial court's decisions. In re Est. of Fitzgerald, 172 Wn. App. 437, 448, 294 P.3d 720 (2012) (reviewing a trial court's decision to deny a continuance to conduct discovery in a TEDRA proceeding for abuse of discretion). "Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). However, we review de novo the interpretation of a will or trust instrument. Bernard, 182 Wn. App. at 704.

"When construing a testamentary instrument, our paramount duty is to give effect to the maker's intent. That intent must be gathered from the instrument as a whole, and specific provisions must be construed in light of the entire document." Id. We follow the objective manifestation theory used in contract interpretation and impute an intention corresponding to the reasonable meaning of the words used. Id. at 704-05. When the meaning of a trust instrument is unambiguous, it does not require judicial construction or

7

interpretation. Id. at 704. A trust term is ambiguous if the language is susceptible to more than one reasonable interpretation. In re Wash. Builders Benefit Tr., 173 Wn. App. 34, 75, 293 P.3d 1206 (2013). If the term is ambiguous, we may consider extrinsic evidence. In re Est. of Price, 73 Wn. App. 745, 754, 871 P.2d 1079 (1994).

I.      Disclaimer and Funding of the Shelter Trust

Axel argues that the trial court failed to properly interpret the Trust Agreement such that it complies with Heinz's expressed wishes to minimize estate taxes. He contends that the Trust Agreement provided for non-pro rata distribution of assets to fund the Shelter Trust, allowing for Heinz to keep the entirety of the interest in the Tacoma apartments in the Marital Trust, which he could then gift. Michelle claims, and the trial court agreed, that Heinz disclaimed Christa's community property, an undivided one-half interest in every asset, directly into the Shelter Trust, and thus could gift only his remaining half interest in the Tacoma apartments. We agree with Axel.

We look to the Trust Agreement itself to discern the intent of the grantor. As noted above, "intent must be gathered from the instrument as a whole, and specific provisions must be construed in light of the entire document." Bernard, 182 Wn. App. at 704. Upon the death of one of the Grantors, the Trust Agreement provides that "[t]he entire beneficial interest in the Trust assets shall pass to the surv[iving] Grantor and be held in the original Trust as the 'Marital Trust,' unless and to the extent that the surviving Grantor, as beneficiary, disclaims all or any portion of the Trust that is then considered to be a part of the

deceased Grantor's estate." Based on this language, the Grantor may choose whether to disclaim any of the estate assets, and then choose which of the estate's assets to disclaim.

Upon Christa's death, pursuant to the Trust Agreement, her half-interest in the Trust assets passed to Heinz and was held in the original Trust, renamed as the Marital Trust. Four months later, in December 2019, and again in February 2020, Heinz executed documents disclaiming the following:

> all rights, title, benefits and interest in that portion of the Trust assets that is part of the Estate of Christa Strakeljahn and to any interest I might have or acquire in said real property assets so that the disclaimed assets may be transferred to the "Shelter Trust" as provided for in the Trust.

Thus, while he could have disclaimed "any portion" of Christa's estate, Heinz disclaimed the entirety, that is, her share of the community property held in the Trust.

"At death, the community is dissolved and the former community property becomes the separate property of the decedent's estate and of the surviving spouse. The decedent's one-half interest is subject to testamentary disposition." In re of Est. of Politoff, 36 Wn. App. 424, 426-27, 674 P.2d 687 (1984) (surviving husband lacked authority to transfer deceased wife's one-half interest in community property savings accounts from her estate to joint accounts in his and his housekeeper's names). Washington follows the "item theory" of community property, so a spouse owns one-half of each item that is a community property asset. Id. at 427 (deceased wife's estate owned one-half of each bank account in the community). Christa's estate consisted of her one-half interest in every asset,

including real property. By disclaiming his interest in Christa's estate, Heinz disclaimed Christa's one-half interest in each asset, i.e., the Tacoma apartments, the Burien apartments, their residential property, their cash assets, and any other assets held in the Trust.

The parties differ as to the next step, the proper distribution of the disclaimed assets. Axel contends that in order to minimize estate taxes upon his death, Heinz intended to disclaim property such that the Trustee could then fund the Shelter Trust with assets "which may be dissimilar in kind," signifying a non-pro rata allocation of assets allowed under RCW 11.98.070(15). Michelle counters that the disclaimer clearly disclaims Christa's estate, which is her undivided half-share of the community property on an item-by-item basis.

The disclaimer itself says Heinz disclaims the assets so they "may be transferred to the 'Shelter Trust' as provided for in the Trust." Following the disclaimer's reference to the Trust, which is the controlling document, the Trust Agreement provides that the disclaimed assets "shall be transferred to the Shelter Trust and held and administered pursuant to the Shelter Trust terms herein." Thus, the Trust Agreement can be read to require the specific disclaimed assets—here, Christa's one-half interest in each joint asset—be transferred directly into the Shelter Trust. The Trust Agreement gave Heinz no power to transfer, revoke, amend, or gift assets held in the Shelter Trust, so under this interpretation, Christa's half-interest in the Tacoma apartments, as with each asset, would reside in the Shelter Trust, to be "held and administered pursuant to the Shelter Trust terms." Heinz's half-interest would remain in the Marital Trust,

and he would have the power to gift only his half interest in any particular real property from the Marital Trust.

But the Trust Agreement plainly states that "the entire beneficial interest in the Trust assets" passes to the surviving spouse and is "held in the original Trust as the 'Marital Trust,' *unless and to the extent that the surviving Grantor, as beneficiary, disclaims*" any portion of the Trust. (Emphasis added.) Thus, upon her death, Christa's half-interest was initially held in the Marital Trust until several months later, when Heinz executed the disclaimer. At that point, the Trust Agreement states "the disclaimed assets, which may be dissimilar in kind, but equal in value to the extent of the disclaimer, shall be transferred to the Shelter Trust." While the Trust Agreement uses the passive voice—i.e., "shall be transferred"—in order to give effect to the language that allows transfer of assets "dissimilar in kind, but equal in value to the extent of the disclaimer," the Agreement must be interpreted to allow that the Trustees have the power to transfer the assets. This power to make non-pro rata distributions is specifically allowed by statute; RCW 11.98.070(15) gives a trustee the power to "[s]elect any part of the trust estate in satisfaction of any partition or distribution, in kind, in money or both; make nonpro rata distributions of property in kind; allocate particular assets or portions of them or undivided interests in them to any one or more of the beneficiaries . . . ." Thus, we agree with Axel that under RCW 11.98.070(15) and the terms of the Trust Agreement, the Trustees have the authority to fund the Shelter Trust with available disclaimed assets, as occurred here. The Trust allows the Trustees to make a non-pro rata distribution of assets

11

into the Shelter Trust by transferring the entire interest of certain real property and other assets in the Shelter Trust, and maintaining the entire interest of other real property and assets in the Marital Trust. Read as a whole, the Trust Agreement does not require that the Trustees transfer disclaimed assets to the Shelter Trust by dividing each asset item by item.

Other language in the Trust Agreement also supports the Trustees' power to transfer the entirety of Tacoma apartments to the Marital Trust. The Agreement gives the Trustees "full power to sell, dispose of, invest, reinvest, exchange and manage, the Trust Estate." And the section on "Multiple Trusts" states that the Trustees may hold the assets "as a single fund for joint investment and management without the need for physical segregation . . . . Segregation of the various Trusts, shares or portions need only be made on the books of the Trustee for accounting purposes." The Trustees were allowed to hold the assets in a single fund, but to effectuate the tax minimization plan, they transferred the Burien apartments to "the Strakeljahn Credit Shelter Trust" by Trustee's deed dated June 17, 2020. Then Christa's half-interest in the Tacoma apartments was allocated as a non-pro rata distribution of disclaimed assets to the Marital Trust, and Heinz could gift the apartments to Axel, using his power as a Grantor to control the Marital Trust assets; this was accomplished via the Trustee's deed dated July 3, 2020.[4]

---

[4] The Trust Agreement states that as to any revocable portion of the Trust Estate, such as the Marital Trust, so long as a Grantor is serving as Trustee, "such Trustee shall also have the power to invest, sell, encumber, lease, exchange, dispose of and manage the Trust Estate as though such Trustee were the absolute owner thereof."

Axel also argues that Washington law's presumption of estate tax minimization supports his reading of the Trust Agreement. Washington law presumes, unless evidence indicates otherwise, "the citizens and residents of the state, and nonresidents of the state having property located in Washington, desire to take full advantage of the exemptions, exclusions, deductions, and credits allowable under the federal estate, gift, income, and generation-skipping transfer taxes, and the Washington counterparts to those taxes." RCW 11.108.070(1). This principle includes presumptions that must be rebutted by clear, cogent, and convincing evidence, such as the presumption that "[t]he transferor intended to take advantage of the maximum benefit of tax deductions, exemptions, exclusions, or credits." RCW 11.108.070(2), (2)(a). However, given the unambiguous Trust language, we need not address the presumption here to determine Heinz's gift of the Tacoma apartments was proper.[5] Nor do we need to look to extrinsic evidence of Heinz's intent to minimize estate taxes.[6]

---

[5] According to Axel, if 50 percent of the Tacoma apartments passed into the Shelter Trust, "in addition to the assets actually transferred to the Shelter Trust, it would cause the Shelter Trust to be funded with assets in excess of the $2,193,000 state estate tax exemption, resulting in approximately $96,000 of estate tax due from Christa's estate." According to Axel's calculations, the value of 50 percent of the Tacoma apartments was $1,085,000, which if added to the Shelter Trust would amount to $965,550 more than the state estate tax exemption resulting in approximately $96,000 in estate tax from Christa's estate. But Axel appears to overvalue the Tacoma property because he does not account for the debt on the property, which was $235,503.16. Accounting for the loan, 50 percent of the Tacoma apartment value is $948,248.42.

The accountant likewise appears to have overvalued the entire trust assets at $5,383,225 when he recommended transferring the Burien property to the Shelter Trust; based on that valuation, transferring Christa's half-interest would have resulted in funding the Shelter Trust with $2,691,612.50. However, at the time of Christa's death in August 2019, the Trust held $4,754,812 in assets and $427,181 in debts, for a total of $4,327,631. Disclaiming Christa's half-interest in every asset would have funded the Shelter Trust with $2,163,815.50—below the taxable amount.

[6] Axel submitted extensive extrinsic evidence of Heinz's intent to minimize taxes and for Axel to receive 2/3 of his estate. The Trust Agreement divides the assets 50/50 between Axel and Michelle as residuary beneficiaries, which suggests Heinz and Christa intended even distribution of their property between their children. However, under the Trust Agreement, the surviving spouse retains the ability to control the Marital Trust during their lifetime. Thus, the more recent evidence of Heinz's intent for Axel to end up with 2/3 of the estate, while not reflected in the

Construing the plain language of the Trust Agreement as a whole, upon Christa's death, her one-half interest was held in the Marital Trust until Heinz disclaimed it. At that point, the Trustees had the power to fund the Shelter Trust with the disclaimed property on a non-pro rata basis, so that the entirety of the Tacoma apartments was maintained in the Marital Trust. As an asset in the Marital Trust, Heinz could gift the full interest in that property to Axel.

II.     Other Grounds to Invalidate the Gift

The commissioner relied on two additional grounds for revoking the gift, which the trial court adopted: violation of the gifting provision of the Trust Agreement and Axel's failure to sign the deed as co-Trustee. We conclude the court erred in relying on these grounds to revoke the gift.

A.     Gifting Provision

According to Michelle, and the trial court's adopted reasoning, the gift of the Tacoma apartments "was not at all in conformance with the amounts, manner, frequency and procedure for gifting established by Heinz and Christa." Axel contends Heinz gifted the property under his Retained Grantor Powers, which gave him total control over the Marital Trust. We agree with Axel.

Michelle relies on the gifting power accorded the Trustees by the Trust Agreement, as did the court below. Article IX of the Trust Agreement, entitled Powers of the Trustee, establishes:

> While one or both Grantors are still living, to continue any gifting program which Grantors may have instituted for and on behalf of any person, whether or not such person is a remainder beneficiary

---

original Trust Agreement, is not inconsistent with it either, as Heinz could manage the Marital Trust during his lifetime to accomplish that without altering the 50/50 split of any residual estate after his death.

of this Trust. Any such continuation shall be in conformance with the amounts, manner, frequency, and procedure as has been established by Grantors or Grantor.

Michelle argues the gifting provision does not allow for the $2 million gift of the Tacoma apartment because Heinz and Christa had not previously made large gifts to either of their children.

However, the Trust Agreement also includes "Retained Grantor Powers," under which the Grantors reserved the right "during their joint lifetimes to jointly amend, modify or revoke" the Trust in whole or in part. After the death of one of the Grantors, "[t]he assets and terms of the Marital Trust shall remain subject to the surveying [sic] Grantor's powers of appointment, amendment and revocation." As the surviving Grantor, Heinz's "Retained Grantor Power" allowed him to control and dispose of the assets in the Marital Trust as he saw fit, including gifting real property to Axel.

The Trustee's deed conveying the Tacoma apartments to Axel through Skyfall 69 shows Heinz's intention to use this retained power to gift the property: "Heinz Strakeljahn is the surviving Grantor and beneficiary of the Survivor's Marital Trust and a surviving Co-Trustee under the H. and C.S. Living Trust. This deed is given pursuant to the powers vested in the surviving Grantor under the terms of the H. and C.S. Living Trust." Thus, Heinz transferred the property as a Grantor with the power to amend, modify, or revoke the Trust, rather than as a Trustee continuing a previously established gifting program. While Michelle states that "Heinz's role, as either Grantor or Co-Trustee, at the time the gift was made is irrelevant," because any gifts must be made in conformance with the

15

gifting provision of the Trust, she provides no explanation as to why the parameters of the Trustees' gifting power would prevail over the ultimate power of the Grantors to amend the Trust. Heinz's gift of the Tacoma apartments to Axel was not invalid under the terms of the Trust.

### B. Execution of the Deed

Michelle also argues the trial court properly invalidated the transfer of the Tacoma apartments because only Heinz signed the deed, and Washington law and the Trust Agreement require all co-Trustees to jointly exercise their authority to convey real property. Axel contends the retained Grantor powers are unilateral and did not require co-Trustees to sign the deed. We agree with Axel.

As noted above, Heinz executed the transfer as a Grantor under his broad power to amend the Marital Trust, rather than as a Trustee limited by Article IX of the Agreement. Michelle relies on section 9.18, "Independent Authority of Original Co-Trustees," which provides:

> Notwithstanding any other provision to the contrary, the Grantors specifically authorize either of the Original Co-Trustees, during their joint lives and while competent and serving as Co-Trustees, to act independently of the other and have the authority to perform all powers and acts as granted under this Declaration of Trust, except such authority as affects an interest in real property, such as, to sell, transfer, assign, mortgage, hypothecate or otherwise encumber the real property of the Trust Estate, which will necessitate the concurrence of both original Co-Trustees as long as both are alive.

Under this provision, transactions involving real property would require both the original co-Trustees, Heinz and Christa, to concur while the two were alive. However, after Christa's death, nothing in the Trust Agreement requires involvement by both remaining Trustees, here Heinz and Axel, in actions

16

involving real property. With only one original co-Trustee remaining, the limitation would no longer apply.

Michelle also cites RCW 11.98.016, which states, "Any power vested in three or more trustees jointly may be exercised by a majority of such trustees," and allows a Trustee to sign a written instrument delegating power to a co-trustee. She argues that because only two of the three Trustees remained after Christa's death, Heinz and Axel could not act by majority under RCW 11.98.016(1), and Axel had not delegated power to Heinz under RCW 11.98.016(3). However, after Christa's death, only two Trustees remained, so RCW 11.98.016, which pertains to three or more Trustees, did not apply. The court erred by invalidating the gift based on Axel's failure to sign the deed.

Heinz's gift of the Tacoma apartments to Axel/Skyfall was in keeping with the terms of the Trust Agreement. We reverse the trial court's decision and remand to reinstate the gift and deed transferring the Tacoma property to Skyfall.

III.    Fees

TEDRA gives courts the discretion to award reasonable attorney fees and costs as follows:

> a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings. The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

RCW 11.96A.150(1). Under this statute, courts have considerable discretion over whether to award fees. Atkinson v. Est. of Hook, 193 Wn. App. 862, 874, 374 P.3d 215 (2016). We review an award of attorney fees for abuse of discretion. In re Est. of Evans, 181 Wn. App. 436, 451, 326 P.3d 755 (2014).

A.          Trial Court Award of Fees

Axel argues the court improperly awarded attorney fees to Michelle and asks for reversal of her fee award and grant of the fees to make the Trust whole as requested below.[7] The court determined, "[t]he litigation in this proceeding benefited the trust. It is equitable to award Petitioner her reasonable attorney's fees and costs incurred in this proceeding pursuant to RCW 11.96A.150 to be paid from the Trust."

Because the gift of the Tacoma apartments was valid, Michelle's litigation to undo Heinz's estate planning efforts was to the detriment, rather than the benefit, of the Trust. As a result, the trial court's award of fees Michelle was an abuse of discretion. We reverse the award of fees to Michelle. We direct the court on remand to consider the Trust's request for reasonable fees for successful litigation in its defense.

B.          Fees on Appeal

Both parties request fees on appeal. Appellate courts have the same discretion to award fees under RCW 11.96A.150(1). Because Axel as Trustee litigated on behalf of the Trust and prevailed to its benefit, we award fees on appeal to the Trust.

---

[7] The Trust requested fees below.

Reversed and remanded for further proceedings consistent with this opinion.

Chung, J.

WE CONCUR:

Feldman, J.          Coburn, J.